UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN PRUNKEL,<br><br>      Plaintiff,<br><br>v.<br><br>COUNTY OF BERGEN; BERGEN COUNTY SHERIFF MICHAEL SAUDINO; BERGEN COUNTY SHERIFF DSGT M. GRANATA; BERGEN COUNTY SHERIFF DETECTIVE JOHN DILKES; TROOPER N. DESANTIS; OFFICE OF MONROE COUNTY DISTRICT ATTORNEY; COUNTY OF MONROE; MONROE COUNTY DISTRICT ATTORNEY E. DAVID CHRISTINE, JR.; JOHN MOLINELLI, BERGEN COUNTY PROSECUTOR; VILLAGE OF RIDGEFIELD PARK; JOHN DOES # 1-5; JOHN DOES # 6-10, and JOHN DOES # 11-15<br><br>      Defendants. | CASE NO:<br><br>CIVIL ACTION<br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, Steven Prunkel ("Plaintiff"), residing at 211 Chickadee Way, East Stroudsburg, Pennsylvania, by way of Complaint against defendants, County of Bergen, Bergen County Sheriff Michael Saudino, Bergen County Sheriff DSGT M. Granata, Bergen County Sheriff Detective John Dilkes, Trooper N. Desantis, Office of Monroe County District Attorney, County of Monroe, Monroe County

District Attorney E. David Christine, Jr., John Molinelli, Bergen County Prosecutor, Village of Ridgefield Park, John Does # 1-5, and John Does # 6-10 (collectively "Defendants") as follows:

## THE PARTIES

1.   Plaintiff is an individual who suffered significant physical and emotional injury arising out of numerous civil rights violations by the Defendants including unlawful arrest and imprisonment for more than one year and malicious prosecution in violation of his rights guaranteed by the laws and Constitution of the United States and the State of New Jersey.

2.   Defendant, County of Bergen, is a County Government formed under the laws of the State of New Jersey with the power to sue and be sued, having an address at 10 Main Street, Hackensack, New Jersey. Bergen County has adopted a policy and/or otherwise allowed and/or tolerated conduct and policies by its officers and agents that has resulted in the violation of the Constitutional rights of individuals, including Plaintiff.

3.   Defendant, Michael Saudino, the Bergen County Sheriff having an address at 10 Main Street, Hackensack, New Jersey, is vested with the power granted under the New Jersey State Constitution, State Statute and Administrative Regulation. Sheriff Saudino is the executive and administrative head of the Bergen County Sheriff's Office and is responsible for the training and supervision of members and employees of the Bergen County Sheriff's

Office. At all times, Sheriff Saudino was charged with the duty to implement policies, practices, procedures and customs in compliance with the Constitution and Laws of the State of New Jersey. Sheriff Saudino implemented, instituted and tolerated a policy, custom and practice at the Sheriff's Department which resulted in the violation of the Constitutional rights of individuals. Defendant Saudino is sued in his individual capacity and in his official capacity as an officer and agent of the County of Bergen.

4. Defendant Bergen County Sheriff's Detective John Dilkes, having an address at 10 Main Street, Hackensack, New Jersey, is or was an officer of the Bergen County Sheriff's Department who participated in and carried out the unlawful acts against Plaintiff. Defendant Dilkes is sued in his individual capacity and in his official capacity as an officer and agent of the County of Bergen.

5. Defendant Bergen County Sheriff's Officer DSGT M. Granata, having an address at 10 Main Street, Hackensack, New Jersey, is or was an officer of the Bergen County Sheriff's Department who participated in and carried out the unlawful acts against Plaintiff. Defendant Granata is sued in his individual capacity and in his official capacity as an officer and agent of the County of Bergen.

3

6.    Defendants John Does # 1-5, fictitious names, having an address at 10 Main Street, Hackensack, New Jersey, are those individual supervising members of the Bergen County Sheriff's Department who were on duty at the time of the events described herein, were involved in the investigation and were those supervising officers who adopted and/or allowed the unlawful policies to be implemented and used to violate the Constitutional rights of Plaintiff.   These Defendants are sued both in their individual capacities and in their official capacities as officers of the County of Bergen.

7.    Defendant Pennsylvania State Trooper N. Desantis ("Trooper Desantis"), having an address at 113 Enforcer Lane, Swiftwater, Pennsylvania, is or was an officer of the Pennsylvania State Police. Defendant Trooper Desantis is sued in his individual capacity.

8.    Defendant Office of Monroe County District Attorney ("MCDA") is an instrumentality of the Commonwealth of Pennsylvania, having an address at 610 Monroe Street #126, Stroudsburg, Pennsylvania.

9.    Defendant Monroe County District Attorney E. David Christine, Jr., having an address at 610 Monroe Street #126, Stroudsburg, Pennsylvania. Defendant Christine is the individual responsible for the operations of the MCDA and the implementation of policies and procedures in effect for the MCDA.

10.   Defendant County of Monroe ("Monroe County"), is a County Government of the Commonwealth of Pennsylvania having an address at One Quaker Plaza, Stroudsburg, Pennsylvania.  Defendant Monroe County organizes and operates the Office of the MCDA.

11.   Defendant John Molinelli, Bergen County Prosecutor, having an address at 10 Main Street, Hackensack, New Jersey. Defendant Molinelli is sued in his individual capacity as the individual responsible for the operations of the Bergen County Prosecutor's Office and the implementation of policies, procedures and methods of investigation employed by that Office.

12.   Defendant Village of Ridgefield Park ("Ridgefield Park") is a municipal entity having an address at 234 Main Street, Ridgefield Park, New Jersey.  Defendant Ridgefield Park is the municipal entity that organizes, operates and controls the Ridgefield Park Police Department.

13.   Defendants, John Does # 6-10 (fictitious names) are unknown individual(s) who are/were other duly sworn members of the Ridgefield Park Police Department, Bergen County Sheriff's Office, Pennsylvania State Police and Monroe County District Attorney's Office who participated in the unlawful conduct set forth infra and undertook such actions under color of state law.

14.   Defendants, John Does # 11-15 (fictitious names) are unknown individual(s) who are/were supervisors, or held supervisory authority over the Defendant Ridgefield Park, Monroe

5

County, Bergen County, and/or were the commanding officers and/or participated in, were aware of and/or expressly or tacitly participated in or approved the conduct giving rise to Plaintiff's claims. Defendants John Does # 11-15 were at all times responsible for implementing policies and protocol as provided by the law and the constitution, for disciplining subordinates, training, hiring, and/or making other discretionary decisions. Defendants John Does # 11-15 are sued in their individual and official capacities.

15. All individual Defendants are being sued in their individual and official capacities except where otherwise designated herein.

16. At all relevant times, all Defendants acted under the color of state law of the State of New Jersey and/or the Commonwealth of Pennsylvania.

17. All Defendants acted in concert with one another to conspire to violate the civil and Constitutional rights of Plaintiff.

## JURISDICTION AND VENUE

18. The Court has personal jurisdiction over the Defendants in this matter by virtue of Plaintiff's causes of action arising out of Defendants' contacts with and actions in New Jersey.

19. The Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. § 1333 as the complaint sets forth claims for civil rights violations pursuant to the United States

Constitution and federal statute, 42 U.S.C. § 1983. Subject matter jurisdiction is established by virtue of the federal question presented by the claims.

20. Venue is proper in the United States District Court for the District of New Jersey, Newark, pursuant to 28 U.S.C. § 1391 because the incidents giving rise to the causes of action took place within the District.

## FACTS COMMON TO ALL COUNTS

21. Plaintiff repeats each and every allegation of the preceding paragraphs as though fully set forth herein.

22. On August 6, 2014 Plaintiff was arrested by the Ridgefield Park Police at his place of employment, Star Candle, in Ridgefield Park, New Jersey.

23. At the time of his arrest, Plaintiff worked at Star Candle Company as a machinist in its large factory located at 300 Industrial Avenue, Ridgefield Park, New Jersey.

24. Plaintiff was arrested and charged with 21 counts of unlawful possession of assault weapons, possession of weapons by a felon, as well as other weapons-related charges.

### Monroe County Investigation Background

25. The arrest undertaken by defendant Ridgefield Park Police Department officers, was based on an investigation conducted by the MCDA, the Pennsylvania State Police (hereinafter

"PSP"), and the Bergen County Sheriff's Department (hereinafter "BCSD").

26.   That investigation was launched based on information provided to the MCDA and the PSP by a witness who was being investigated in connection with his role in shooting the Plaintiff several months earlier and who alleged that Plaintiff had purchased guns illegally using the witness as a straw man.

27.   It was not reasonable for the aforementioned Defendant authorities to rely on the statement of the witness because at the time he made those statements he stood accused of the attempted murder of Plaintiff.

28.   The investigation began in East Stroudsburg, Pennsylvania after Plaintiff was the victim of a shooting on July 29, 2013.

29.   The incident resulted in Plaintiff being shot two times at close range with a shotgun by Kevin Lasch after an argument at the home of Lasch.

30.   Plaintiff, who was unarmed, was gravely injured in the shooting and was hospitalized for several weeks in Pennsylvania where he was treated for various serious injuries and loss of blood.

31.   After the shooting, Lasch was neither held by Police nor charged with any crime in Pennsylvania.

32.  Instead, several months after his near-fatal shooting of Plaintiff, Lasch was interviewed by the PSP and MCDA, as part of the grand jury investigation of the shooting.

33.  Prior to his testimony, the PSP and the MCDA granted Lasch use and derivative immunity for all testimony offered during the interview.

34.  Instead of questioning Lasch about his role in the shooting that nearly killed Plaintiff, the Pennsylvania State and County investigators asked him only about alleged gun purchases he made at gun shows over the course of several months.

35.  With the immunity in place, Lasch told investigators from the PSP and MCDA that he had purchased guns for Plaintiff at various gun shows with money provided by Plaintiff and with Lasch filling out the applications for such purchases.

36.  Lasch testified that all of the guns he had purchased were purchased for Plaintiff and that none of the guns belonged to Lasch.

37.  During his investigation interview with the PSP, Lasch admitted to committing several felonies, including falsifying a gun application and lying to authorities about the owner of certain weapons.

38.  The PSP and MCDA investigators did not ask Lasch to explain any aspect of the shooting at his home in which Plaintiff was nearly killed.

9

39.   Not   one   question   was   asked   of   Lasch   about   the circumstances surrounding the near-fatal shooting of Plaintiff.

40.   At the time Lasch was interviewed, PSP and MCDA were aware that Plaintiff had testified at length with the investigators in Pennsylvania regarding the attempted murder by Lasch.

41.   Plaintiff had told investigators about the attempted murder and the events leading up to the time that Lasch shot him twice with a shotgun.

42.   The PSP and the MCDA had knowledge at the time of the investigation that Lasch had shot and seriously injured Plaintiff in 2013.

### Plan To Arrest Plaintiff

43.   Based solely on the information Lasch provided to the PSP and the MCDA, the Pennsylvania authorities organized a raid for the purpose of arresting Plaintiff and charging him with 21 felony gun charges in New Jersey.

44.   The raid and arrest of Plaintiff in Ridgefield Park, New Jersey was coordinated by PSP, MCDA, the BCSD and Ridgefield Park Police with the objective being to make it appear that the arrest was based on an anonymous tip received by PSP about Plaintiff.

45.   As part of the plan, PSP communicated with the BCSD and stated that they were investigating someone (Plaintiff) who worked in a Bergen County factory relating to gun charges.

46.   In connection with the plan, BCSD placed two of its officers as undercover agents in the Star Candle Factory in Ridgefield Park, where Plaintiff worked.

47.   The BCSD identified themselves as "employees" of Star Candle to the Ridgefield Park Police at the time of the raid and arrest of Plaintiff.

48.   The owner of Star Candle did not authorize undercover officers to be placed in his factory for the purposes of any investigation and he was unaware that BCSD officers were operating in his factory.

49.   BCSD and the PSP planned the raid along with the MCDA to take place at the Ridgefield Park location in New Jersey.

50.   In coordinating the investigation and using the undercover officers in New Jersey, the MCDA and PSP communicated directly and solely with BCSD.

51.   The standard procedure in place for such an investigation requires the MCDA and PSP to contact the Bergen County Prosecutor's Officer during the investigation prior to placing the officers in Star Candle and conducting the raid.

52.   MCDA and PSP failed to follow the standard procedure by failing to contact the Bergen County Prosecutor's Office or otherwise involving that office in its activities prior to the arrest of Plaintiff.

53.   MCDA  and  PSP  did  not  contact  the  Bergen  County Prosecutor's Office because those offices did not want the Bergen County Prosecutor's Office to know of the improper and illegal means by which Plaintiff was framed and otherwise wrongly arrested and detained.

54.   By  virtue  of  contacting  the  BCSD  Office  directly, defendants MCDA and PSP were not required to explain the basis for their investigation, the source of the anonymous tip or the source of the recovered firearms.

55.   Nevertheless, MCDA, PSP, and BCSD organized and planned the raid in which Plaintiff was charged and detained.

56.   On or about August 6, 2014, PSP Trooper N. Desantis reported to Ridgefield Park Police Officer William Morton that PSP had received an anonymous e-mail tip relating to Plaintiff.

57.   The email stated "Steven Prunkel is storing assault firearms at Star Candle".  The tip stated that the "assault firearms would be in a wooden crate under a red cooler near the area that Prunkel works in."

58.   After receiving the e-mail, PSP contacted Ridgefield Park Police and advised that they had received the anonymous tip regarding Plaintiff and alleged guns stored at the Star Candle facility.

59.   The tip was reported to Ridgefield Park Police by PSP at 2:40 p.m.

60.   Once again, PSP bypassed communication with the Bergen County Prosecutor's Office at that time and directly contacted BCSD and Ridgefield Park Police Department.   This was contrary to standard operating procedure and it allowed PSP to coordinate the arrest and detention of Plaintiff without providing credible evidence to the Bergen County Prosecutor's Office.

**Arrest of Plaintiff**

61.   Within one hour of receiving the e-mail, Ridgefield Park Police directed several of its police units to respond to Star Candle for the purpose of arresting Plaintiff.

62.   Ridgefield Park Police Department did not conduct any investigation on its own to determine the validity of the information allegedly provided by the anonymous e-mail.

63.   Ridgefield Park Police did not request or obtain any information about the source of the anonymous e-mail.

64.   At no time prior to the response at Star Candle did PSP, MCDA, BCSD or Ridgefield Park Police contact the Bergen County Prosecutor's Office regarding Plaintiff or the alleged probable cause for his arrest.

65.   Before the raid and arrest of Plaintiff, the Bergen County Prosecutor's Office did not review the testimony of Lasch that was the basis for the investigation commenced by Pennsylvania authorities or Plaintiff's testimony in Pennsylvania.

66. The PSP advised the Ridgefield Park Police that it had received an anonymous tip from MCDA's Office which purportedly stated that "Steven Prunkel is storing assault firearms at Star Candle".

67. Neither the PSP nor the MCDA conducted any investigation into the source or validity of the anonymous tip received in Pennsylvania.

68. None of the Defendants confirmed whether the tip was accurate or derived from a person with actual knowledge of the situation.

69. Instead, Defendants carried out the raid at Star Candle without any additional evidence or probable cause than the anonymous tip received in Pennsylvania.

70. The anonymous tip had been provided by Lasch in Pennsylvania to the PSP and/or the MCDA.  The tip was provided by Lasch at the direction of the PSP and MCDA in order to provide a basis for arresting Plaintiff in New Jersey.

71. PSP, MCDA and the BCSD had knowledge that the anonymous tip had been provided by Lasch.

72. Prior to the "tip" from Lasch, the PSP and MCDA coordinated the plan to have Lasch or others move guns from Lasch's possession in Pennsylvania to the Star Candle facility in Ridgefield Park.

73.  The efforts to move and locate the guns at Star Candle were directly and/or indirectly undertaken and overseen by the PSP, MCDA, and the BCSD.

74.  This was done in order to support false allegations against Plaintiff made by virtue of Lasch's tip.

75.  Lasch had access to the Star Candle factory as he had recently worked at that location.

76.  Lasch and/or the undercover officers of the BCSD with access to the Star Candle factory assisted in locating the guns at the Star Candle factory.

77.  Defendants then directed Lasch to send the anonymous e-mail with the information incriminating Plaintiff.

78.  After receiving notice from the PSP and/or MCSD of the anonymous e-mail tip, the Ridgefield Park Police obtained consent to search the property from the owner, Steven Gurewitsch.

79.  At the time of the raid, Ridgefield Park Police officers went directly to the location of the guns in the large factory and warehouse, as if they knew exactly where the guns would be.

80.  In fact, Ridgefield Park Police had been directed to the exact location of the guns by the undercover officers of the BCSD.

81.  The Ridgefield Park Police found a large crate under a bright red cooler near the work area where Plaintiff was working.

82.  The crate weighed more than 200 pounds and contained many weapons including rifles and handguns.

83. Around that time, Plaintiff was still suffering from significant injuries to his arm and back as a result of the shooting by Lasch several months earlier. He was physically unable to lift the crate containing the guns.

84. The crate was located on a shelf approximately 10 feet above the floor and was not accessible without a forklift given its size and weight.

85. Upon discovering the weapons in the crate, the Ridgefield Park Police immediately detained Plaintiff.

86. The Ridgefield Park Police then obtained the names of several witnesses (including the two undercover officers of the BCSD) and employees of Star Candle.

87. While Plaintiff was detained, the Ridgefield Park Police contacted PSP and MCDA to collect additional information about Plaintiff.

88. PSP Trooper Desantis told the Ridgefield Park Police that Plaintiff had been the target of an investigation in Pennsylvania involving his illegal possession of guns.

89. Trooper N. Desantis of PSP advised Officer Morton that they were currently investigating Plaintiff and a third party for purchasing firearms illegally and that Plaintiff was ineligible for possessing firearms by virtue of a prior conviction.

90.   After Plaintiff was arrested, Ridgefield Police Officer William Morton contacted Pennsylvania State Police and requested additional information relating to Plaintiff.

91.   In addition, PSP informed Ridgefield Park Police that Plaintiff had been convicted of a prior felony and that he was prohibited from possessing firearms.

92.   PSP advised that Plaintiff allegedly had used a straw buyer to purchase guns for Plaintiff at several gun shows.

93.   Trooper Desantis also told Ridgefield Park Police that "the straw buyer was a part of a grand jury investigation where he admitted that he would attend gun shows with Prunkel and he would purchase firearms under Prunkel's command with money that Prunkel gave him."

94.   Furthermore, Trooper Desantis emailed Ridgefield Park Police a list of weapons that the straw buyer allegedly purchased for Prunkel.  Desantis also emailed to Ridgefield Park Police a sworn statement from Kevin Lasch that the weapons had been purchased under Prunkel's direction.

95.   The witness who had provided the aforementioned information was Kevin Lasch.

96.   Ridgefield Park Police did not collect any forensic or physical evidence at the scene that linked Plaintiff to the guns.

17

97. However, based on the information from PSP and MCDA, Plaintiff was arrested and charged with numerous weapons offenses, including gun charges and possession of guns by a felon.

98. At no time during or after the arrest has any Defendant confirmed, other than by the statements of Lasch, that any of the weapons were owned or purchased by Plaintiff.

99. Most of the guns found at Star Candle were registered to Lasch.

100. None of the guns found at Star Candle was registered to Plaintiff. There was no evidence that Plaintiff had ever purchased the guns.

101. In order to connect the guns to Plaintiff, PSP and MCDA adopted Lasch's testimony prior to the grand jury for his shooting of Plaintiff.

102. PSP and MCDA accepted Lasch's testimony as true and used that as the basis for setting up the arrest of Plaintiff in Ridgefield Park, New Jersey.

103. The Ridgefield Park Police arrested and charged Plaintiff with the aforesaid weapons offense without any evidence to support such charges against Plaintiff and without conducting a proper investigation.

104. At the time of Plaintiff's arrest, the arresting report identified several witnesses present at the Star Candle facility.

105. Among those identified on the police report as witnesses by the Ridgefield Park Police were DSGT Granata and John Dilkes.

106. The telephone numbers for these witnesses were both listed as (201) 646-2222, which is the telephone number for the Bergen County Sheriff's Department.

107. On the report, the witnesses DSGT Granata and John Dilkes were identified as "employees" of Star Candle.

108. This was not true, as both DSGT Granata and John Dilkes were officers of the Bergen County Sheriff's Department.

109. Granata and Dilkes had been placed as undercover agents by BCSD as part of the plan organized by PSP and MCDA.

110. After Ridgefield Park Police spoke with PSP, Plaintiff was detained and transported to Bergen County Jail on August 6, 2014.

### Investigation After Plaintiff's Arrest

111. Defendant Molinelli and the Bergen County Prosecutor's Office conducted no additional independent investigation prior to charging Plaintiff with the 21 felonies through an indictment.

112. Defendants failed to inquire as to the source of the anonymous tip or the identity of the tipster.

113. Defendants also failed to order or review any forensic evidence of the guns located at Star Candle.

114. Defendants wholly relied upon the limited information it received from the defendants PSP and Ridgefield Park Police, which