NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| STEVEN PRUNKEL, <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF BERGEN, *et al.*, <br><br> Defendants. | Civil Action No.: 17-5154 (JLL) <br><br> **OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendants N. DeSantis ("DeSantis"), John Molinelli ("Molinelli"), and the Office of Monroe County District Attorney, Monroe County, and elected Monroe County District Attorney E. David Christine's (collectively, "the Monroe Defendants") Motions to Dismiss Plaintiff Steven Prunkel's ("Plaintiff") Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF Nos. 19, 22, 23). Plaintiff has submitted Opposition to the Motions to Dismiss, (ECF No. 29), which DeSantis has replied to, (ECF No. 31). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants Monroe Defendants' and Molinelli's Motions to Dismiss all claims against them. Furthermore, the Court grants DeSantis' Motion to Dismiss Counts I, II, and VII, but denies the Motion as to Counts III, IV, V, VI, VIII, and IX.

# BACKGROUND[1]

On July 29, 2013, Plaintiff was shot twice by Kevin Lasch ("Lasch") during an argument at Lasch's apartment. (ECF No. 1 ("Compl.") ¶ 29). While investigating the shooting, the Pennsylvania State Police ("PSP") and the Monroe County District Attorney's Office ("MCDA") interviewed Lasch. (*Id.* ¶ 32). During the interview, the PSP asked Lasch about alleged gun purchases made at gun shows over the course of several months. (*Id.* ¶ 34). Lasch told the PSP and MCDA that he filled out gun purchase applications for Plaintiff, using Plaintiff's money. (*Id.* ¶¶ 35–36). At no point did the PSP or MCDA ask Lasch about the circumstances surrounding the shooting, despite having knowledge at the time of the investigation that Lasch had shot and seriously injured Plaintiff. (*Id.* ¶ 38–39, 42). Plaintiff alleges that the PSP and MCDA prompted Lasch to write an "anonymous" tip by email containing some of the information he provided to the PSP. (*Id.* ¶ 70). PSP Trooper DeSantis then contacted the Ridgefield Park Police Department, which, according to Plaintiff, bypassed the standard operating procedure of first contacting the Bergen County Prosecutor's Office. (Id. ¶ 60). DeSantis reported to the Ridgefield Park Police that the PSP had received an anonymous tip by email concerning Plaintiff. (*Id.* ¶ 56). According to the supposedly anonymous tip, Plaintiff had stored assault rifles in a wooden crate at the factory where he worked in Ridgefield Park, New Jersey. (*Id.* ¶ 57).

Within one hour of communicating with DeSantis, the Ridgefield Park Police directed several of its police units to the factory in order to follow up on the anonymous tip. (*Id.* ¶ 61). Upon their arrival, Ridgefield Park Police were given consent to search the factory by the owner and quickly found a 200 pound crate near Plaintiff's work station containing rifles and handguns.

---

[1] This background is derived from Plaintiff's Complaint, which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

2

(*Id.* ¶¶ 78–82). Upon discovering the weapons, the Ridgefield Park Police immediately detained Plaintiff and contacted the PSP and MCDA to collect additional information about Plaintiff. (*Id.* ¶¶ 85, 87). DeSantis advised the Ridgefield Park Police that the PSP was investigating Plaintiff and a third party for illegally purchasing firearms and that Plaintiff could not legally possess firearms by virtue of a prior conviction. (*Id.* ¶¶ 89–91). Based on this information, Plaintiff was arrested and charged by Assistant District Attorney Molinelli and the Bergen County Prosecutor's Office with numerous weapons offenses, including gun charges and possession of guns by a felon. (*Id.* ¶ 97). Plaintiff was indicted on 21 counts in the Superior Court of Bergen County and was held pending trial from August 2014 to September 2015. (*Id.* ¶¶ 117–18).

During this time, Plaintiff was still suffering significant injuries that he sustained as a result of the gunshot wounds. (*Id.* ¶ 119). In fact, Plaintiff's condition worsened while he was incarcerated and he was hospitalized on two occasions to treat his injuries. (*Id.* ¶ 120). Plaintiff also states that he was denied psychological counseling. (*Id.* ¶ 121). While incarcerated, Plaintiff sought discovery from the Bergen County Prosecutor's Office regarding the grand jury proceedings and the source of the anonymous tip, but the information was not produced to him. (*Id.* ¶¶ 122–126). The Bergen County Prosecutor's Office, however, did produce the serial numbers and photographs of the guns to Plaintiff. (*Id.* ¶ 127). In September 2015, Plaintiff was brought before the Bergen County Superior Court and advised that all of the charges against him had been dropped. (*Id.* ¶ 133). No explanation was given by the Bergen County Superior Court or any of the Defendants as to why the charges were dropped. (*Id.* ¶ 134).

Apparently, the guns were registered only to Lasch, not Plaintiff, and there was no other evidence that connected Plaintiff to the weapons besides Lasch's information. (*Id.* ¶¶ 98–100). Plaintiff asserts that Lasch's information did not provide the various defendants with probable

3

cause for his arrest and detainment because Lasch had attempted to murder Plaintiff and therefore Lasch's information was not credible. (*Id.* ¶ 103). Plaintiff further asserts that the PSP, MCDA, Bergen County Sheriff's Department, and Ridgefield Park Police attempted to hide their lack of probable cause by making it appear that the raid and Plaintiff's arrest was based on an anonymous tip when in fact it was not. (*Id.* ¶ 44). Moreover, Plaintiff claims that the guns never belonged to him, and that he was framed by the various police departments, who planted the weapons in the factory in order to bring charges against him. (*Id.* ¶¶ 72–77). Based on this, Plaintiff brought this action against the various agencies and actors for his allegedly unlawful arrest and detainment in violation of his rights under 42 U.S.C. § 1983 ("§ 1983") and New Jersey's Civil Rights Act ("NJCRA"). Specifically, Plaintiff alleges Counts I (false arrest/false imprisonment), II (supervisory liability), III (abuse of process), IV (malicious prosecution), V (failure to intervene), VI (civil conspiracy), VII (unlawful policy), VIII (excessive bail), and IX (substantive due process) against all defendants. Accordingly, the Monroe Defendants, Molinelli, and DeSantis each brought Motions to Dismiss Plaintiff's Complaint.

## **LEGAL STANDARD**

### I. Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The plaintiff, as the party asserting jurisdiction, bears the burden to establishing the federal court's authority to hear the matter. *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993). An attack under Fed. R. Civ. P. 12(b)(1) may either assert a factual or facial challenge to the court's jurisdiction. *See Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006); *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). When a defendant facially attacks

4

the Court's jurisdiction under Rule 12(b)(1), this type of challenge contests the adequacy of the language used in the pleading; the trial court must therefore construe the pleadings in a light most favorable to the plaintiff and presume all well-pleaded factual allegations in the complaint as true. *Gould*, 2201 F.3d at 176. Alternatively, when bringing a factual attack, the defendant contends that the facts on which the plaintiff's allegations rely are not true. *Id.* Therefore, the plaintiff's allegations do not benefit from a presumption of truthfulness. *Id.* The court, instead, must weigh the evidence in its discretion by taking into account affidavits, documents, and even limited evidentiary hearings. *Id.* Here, Defendants are bringing Motions under 12(b)(1) because it is the proper mechanism for raising the issue of whether immunity bars federal subject matter jurisdiction. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984)).

## II.  Federal Rule of Civil Procedure 12(b)(6)

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the court must take three steps: first, the court must take note of the elements a plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than

conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## ANALYSIS

### I. The Monroe Defendants

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Therefore, to state a claim for relief under § 1983, a plaintiff must allege two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255–56 (3d Cir. 1994).

It has long been established that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *see also Grabow v. S. State Corr. Facility*, 726 F. Supp. 537, 538–39 (D.N.J. 1989). Accordingly, the Monroe Defendants are not "persons" within the meaning of a § 1983 suit and

6

all claims against it must be dismissed. *See, e.g., Salerno v. Corzine*, No. 06-3547 (FSH), 2006 U.S. Dist. LEXIS 92353, at *3 (D.N.J. Dec. 20, 2006) *rev'd on other grounds*, 449 F. App'x 118 (3d Cir. 2011).

In addition to bringing claims under § 1983, Plaintiff's complaint also asserts claims against the Monroe Defendants under the NJCRA. A person may bring a civil action under the NJCRA in two circumstances: "(1) when he's deprived of a right, or (2) when his rights are interfered with by threats, intimidation, coercion, or force." *Felicioni v. Admin. Office of Courts*, 961 A.2d 1207, 1218 (N.J. Super. Ct. App. Div. 2008). The NJCRA was modeled after § 1983, and thus courts in New Jersey have generally looked at claims under the NJCRA "through the lens of § 1983." *Trafton v. City of Woodbury*, 799 F.Supp.2d 417, 443–44 (D.N.J. 2011); *see also Chapman v. New Jersey*, No. 08-4130 (AET), 2009 U.S. Dist. LEXIS 75720, at *7 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart . . . ."); *Armstrong v. Sherman*, No. 09-716 (AET), 2010 U.S. Dist. LEXIS 55616, at *15 (D.N.J. June 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983 . . . .").

Consistent with the above § 1983 analysis, New Jersey Courts, as well as the Third Circuit, have held that a State is not a "person" for purposes of the NJCRA. *See Brown v. State*, 124 A.3d 243, 255–56 (N.J. Super. Ct. App. Div. 2015) ("Given that the Legislature did not choose to include an express waiver of sovereign immunity in the Civil Rights Act and that the State enjoys immunity under the analogous § 1983, we conclude that the State is immune from a suit for damages under the Civil Rights Act."); *see also Didiano v. Balicki*, 488 F. App'x 634, 638–39 (3d Cir. 2012) (holding that the State is not a "person" under the NJCRA because although the NJCRA does not define "person," the definition of "person" in N.J.S.A. § 1:1-2 "explicitly states that the

word 'person' shall include the State of New Jersey only in the limited circumstance of certain property."). Hence, the Monroe Defendants are not "persons" for purposes of the NJCRA and are not subject to liability under that act. Plaintiff seemingly concedes this point as he does not address the issue in his opposition to the Motion to Dismiss. (*See* ECF No. 29 at 28–34). Thus, all claims against the Monroe Defendants must be dismissed with prejudice.

Furthermore, even if § 1983 and NJCRA did apply, the claims against Monroe Defendants would be dismissed to the extent that they allege intentional torts. For example, Counts I (false imprisonment), III (abuse of process), IV (malicious prosecution), and VI (civil conspiracy) are all claims against the Monroe Defendants for intentional torts. However, a public entity may not be held liable for intentional torts allegedly committed by its employees. *See Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 767 (D.N.J. 2016); *Soto v. City of Newark*, 72 F. Supp. 2d 489, 497 (D.N.J. 1999) (holding that a public entity may not be held liable for intentional torts of a public employee) (citing *McDonough v. Jorda*, 519 A.2d 874, 880 (N.J. Super. Ct. App. Div. 1986)). Accordingly, since the Monroe Defendants cannot be held liable for intentional torts, Plaintiff's claims must be dismissed with prejudice.

## II. Molinelli

It is well settled that "a state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). The Supreme Court held that a prosecutor is absolutely immune from damages under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" while functioning as an advocate for the state. *Id.* at 430–31; *see also Moore v. Middlesex County Prosecutor's Office*, 503 Fed. Appx. 108, 109 (3d Cir. 2012) ("Although a prosecutor's deliberate destruction of exculpatory evidence is not entitled to absolute immunity, the decision to

withhold such evidence from the defense while functioning as an advocate for the state is protected by absolute immunity."). Since *Imbler*, the Supreme Court has held that "absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search warrant application." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (citations omitted). Prosecutorial immunity also extends to decisions to seek an indictment and to preparations for a grand jury. *See Ray v. New Jersey*, 219 F. App'x 121, 125 (3d Cir. 2007).

In this case, Plaintiff alleges that Molinelli should have acted to secure additional information before initiating the prosecution and failed to supervise the police during the investigation and factory raid. (ECF No. 29 at 35–37). However, there is nothing in these allegations to suggest that Molinelli was acting outside the scope of his prosecutorial duties in investigating and pursuing a criminal prosecution against Plaintiff. In fact, the record suggests Molinelli was not involved in any criminal activity because the PSP and other law enforcement agencies "did not want the Bergen County Prosecutor's Office to know of the improper and illegal means by which Plaintiff was framed and otherwise wrongly arrested and detained." (Compl. ¶ 53). Thus, Molinelli is absolutely immune from all claims alleged by Plaintiff because the alleged acts were plainly taken in exercise of Molinelli's core function as a prosecutor. *See Rehberg v. Paulk*, 566 U.S. 356, 365 (2012); *Imbler*, 424 U.S. at 430–31. Therefore, Molinelli is entitled to prosecutorial immunity, and all claims against him are dismissed with prejudice.

### III. DeSantis

1. Qualified Immunity

DeSantis asserts that Plaintiff may not recover damages from him because he is entitled to qualified immunity. (ECF No. 23-2 at 10). Qualified immunity shields government officials "from

liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For qualified immunity to attach, an official must demonstrate his conduct was objectively reasonable. *Id.* at 818–19. Qualified immunity is unavailable to a defendant government official if the plaintiff's complaint meets two prongs: (1) the facts alleged by the plaintiff show the violation of a constitutional right; and (2) the plaintiff's constitutional right was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); *George v. Rehiel*, 738 F.3d 562, 572 (3d Cir. 2013).

At this juncture, the allegations in Plaintiff's claims under § 1983 and the NJCRA are sufficient and overcome DeSantis' assertion that he is entitled to qualified immunity. As discussed, to bring a § 1983 claim, and/or a parallel claim under the NJCRA, a plaintiff must allege that: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. *See West*, 487 U.S. at 48; *Piecknick*, 36 F.3d at 1255–56; *Trafton*, 799 F.Supp.2d at 443–44. In this matter, Plaintiff has done just that as to DeSantis.

Plaintiff alleges that, without justification, he was framed, arrested, and detained based on information provided by DeSantis, which allegedly DeSantis knew to be false. (Compl. ¶¶ 72–77). According to Plaintiff, the arrest was improper because DeSantis knew the information was provided by a non-credible source, and subsequently DeSantis purposefully misled the Ridgefield Park Police into believing the information was provided by an anonymous tip. (*Id.* ¶¶ 56–57, 70). Plaintiff also claims that DeSantis' communication with the Ridgefield Park Police also bypassed

the proper operating procedure, which would require DeSantis to first contact the Bergen County Prosecutor's Office. (*Id.* ¶ 60). Furthermore, Plaintiff alleges that DeSantis and the PSP moved the crate of weapons to Plaintiff's work station prior to reporting the anonymous tip in order to frame Plaintiff. (*Id.* ¶ 72). Thereafter, Plaintiff was indicted on 21 counts in the Superior Court of Bergen County and held pending trial from August 2014 to September 2015. (*Id.* ¶¶ 117–18). Again, Plaintiff asserts DeSantis, among other defendants, deprived him of his rights and liberties by keeping Plaintiff in custody for this period because DeSantis was aware that he lacked probable cause to arrest Plaintiff, but chose to do so anyway. (*Id.* ¶ 72). Finally, Plaintiff alleges that DeSantis was acting under color of law, as he presented himself as an officer of the State who was authorized to take such actions. (*Id.* ¶ 142). These actions, Plaintiff asserts, deprived him of various civil rights, including loss of liberty. (*Id.* ¶ 144). This Court finds that Plaintiff has therefore sufficiently pled all the requisite elements to assert causes of action for violations of § 1983 and the NJCRA.

However, in this case, simply pleading the requisite elements for the constitutional claims is only a part of the analysis. The Court must also conclude that, at this point in the litigation, DeSantis is not entitled to enjoy qualified immunity. *See Harlow*, 457 U.S. at 818. Here, Plaintiff's complaint contains sufficient factual allegations that could allow a reasonable fact finder to conclude that DeSantis acted in an unreasonable manner toward Plaintiff and beyond the scope of his role as a police officer. Clearly, Plaintiff's right to be free of unreasonable searches and seizures was known to DeSantis and was constitutionally established at the time of the alleged violation. Therefore, the Court finds that Plaintiff's complaint contains allegations that his constitutional rights were knowingly violated by DeSantis and that his right to liberty was established far before the alleged violation occurred.

For example, as discussed, Plaintiff has alleged that DeSantis knew that the anonymous tip was actually provided by a non-credible witness, and that DeSantis did not have probable cause, but chose to assist in Plaintiff's unlawful arrest and detainment. (Compl. ¶¶ 139–45). These alleged actions deprived Plaintiff of his liberty (a clearly established constitutional right) and caused him to suffer physical and emotional distress and humiliation. (*Id.*). Plaintiff further alleges that these actions were done maliciously and with an intent to harm Plaintiff. (*Id.* ¶ 143). Hence, it is Plaintiff's assertion that DeSantis knowingly chose to exceed the scope of his duties by acting in a manner that no reasonable police officer would act, and falsely and maliciously caused his arrest and detention. (*Id.* ¶ 154–55). The Court must accept these allegations as true at this point in the litigation. *See Alston,* 585 F.3d at 758. Should a jury find these allegations credible, DeSantis would not be entitled to qualified immunity as his action would be inconsistent with how a reasonable police officer with knowledge of a clearly established constitutional right would act. Accordingly, the Court finds that such allegations are sufficient to withstand a Motion to Dismiss based on qualified immunity.

2. Common Law Claims

Plaintiff has successfully pled claims for civil conspiracy, abuse of process, malicious prosecution, failure to intervene, excessive bail, and a constitutional claim of substantive due process against DeSantis. Conversely, Plaintiff has failed to plead claims for supervisory liability, unlawful policy, and false imprisonment/false arrest.

*a. Civil Conspiracy*

In New Jersey, a civil conspiracy is "'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means,' the primary element of which 'is an agreement between the parties to inflict a wrong against or injury upon

another, and an overt act that results in damage.'" *Banco Popular N. Am v. Gandi*, 876 A.2d 253, 263 (N.J. 2005) (quoting *Morgan v. Union Cty. Bd. of Chosen Freeholders*, 633 A.2d 955, 998 (N.J. Super. Ct. App. Div. 1993)). Due to the circumstantial nature of evidence in a conspiracy action, the "'question of whether an agreement exists should not be taken from the jury'" if there is a possibility that the jury can "'infer from the circumstances that the alleged conspirators had a meeting of the minds and thus reached an understanding' to achieve the conspiracy's objectives." *Morgan*, 633 A.2d at 998. Here, Plaintiff has alleged that DeSantis and the Ridgefield Park Police agreed to act in concert and deprive Plaintiff of his rights. Specifically, Plaintiff has alleged that DeSantis knew that the anonymous tip was actually based on the information of a non-credible witness, and that DeSantis did not have probable cause for Plaintiff's arrest. (Compl. ¶¶ 173–79). Despite this knowledge, DeSantis acted in concert with the Ridgefield Park Police and other defendants to frame and arrest Plaintiff for the possession of the guns. (*Id.*). Thus, Plaintiff's complaint contains allegations that DeSantis and at least one other defendant jointly decided to deprive Plaintiff of his rights and took overt actions to accomplish their goal. These allegations are sufficient to show a *prima facie* cause of action for civil conspiracy against DeSantis. Therefore, the Court denies DeSantis' Motion to Dismiss Count VI.

### b. Malicious Prosecution

In order to state a claim for malicious prosecution, a plaintiff must establish: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 81–82 (3d Cir. 2007). Here, Plaintiff has alleged

13

that the criminal proceedings in Bergen County Superior Court ended in his favor when the charges were dismissed without explanation. (Compl. ¶ 163). As previously stated, Plaintiff alleges the proceedings were initiated without probable cause because Lasch's information was biased against Plaintiff, and that Plaintiff was falsely imprisoned pending trial as a result of the prosecution. (*Id.* ¶¶ 159, 164). Plaintiff further alleges that DeSantis maliciously acted despite his knowledge that the case lacked probable cause. (*id.* ¶¶ 158–59). As for the final element, DeSantis argues that he could not have initiated criminal charges because he is a PSP trooper who merely passed tip along and that it was the New Jersey authorities who actually arrested Plaintiff and brought charges against him. (ECF No. 23-2 at 13–14). However, Plaintiff has sufficiently alleged that DeSantis forwarded a false tip to the New Jersey authorities and never revealed to the Bergen County Prosecutor's Office that the anonymous tip was provided by Lasch. *See Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) ("Initiation or continuation of a proceeding may also be shown where an arresting officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, or withholds relevant and material information."). Therefore, the Court finds that Plaintiff has pled a *prima facie* case for malicious prosecution and denies DeSantis' Motion to Dismiss Count IV.

 c. *Abuse of Process*

Similarly, Plaintiff has sufficiently pled a claim for abuse of process. The essential elements of misuse or abuse of process "are an ulterior motive and some further act after the issuance of process representing the perversion of the legitimate use of the process." *Simone v. Golden Nugget Hotel & Casino*, 844 F.2d 1031, 1036–37 (3d Cir. 1988) (internal citations omitted). Plaintiff's claim for abuse of process meets this criteria. Specifically, Plaintiff alleges that DeSantis, after initiating proceedings against him, maliciously misrepresented the facts

surrounding Plaintiff's arrest and withheld information to keep Plaintiff detained in the County Correctional Facility. (Compl. ¶ 154). Plaintiff further alleges that DeSantis knew that the charges against Plaintiff were groundless, but pursued them with the ulterior motive of detaining Plaintiff and protecting himself from possible civil charges if the source of the tip was discovered. (Compl. ¶ 155). Based on these allegations, the Court finds that Plaintiff has pled a *prima facie* case of abuse of process and denies DeSantis' Motion to Dismiss Count III.

### d. Failure to Intervene

"If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (quoting to *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986)). However, an officer is only liable if there is a realistic and reasonable opportunity to intervene. *Smith*, 293 F.3d at 650. Plaintiff's Complaint meets this standard. Plaintiff alleges that DeSantis was a PSP trooper at the time of Plaintiff's arrest. (Compl. ¶ 167). Plaintiff further alleges that DeSantis' knowledge of the non-credible source behind the anonymous tip imposed on him a duty to intervene in the unjustified arrest, detention, and false imprisonment of Plaintiff. (*Id.* ¶ 168). Moreover, the allegedly unjustified arrest of Plaintiff violated his constitutional right under the Fourth and Fourteenth Amendments. (*Id.*). Finally, Plaintiff claims that DeSantis' involvement in the investigation gave him reasonable opportunity to intervene in Plaintiff's allegedly unjustified arrest, detainment, and false imprisonment. (*Id.* ¶ 169). These allegations are sufficient to sustain a claim for failure to intervene. Thus, the Court denies DeSantis' Motion to Dismiss Count V.

### e. Excessive Bail

To state an excessive bail claim under § 1983, Plaintiff must allege facts showing that his bail was excessive in violation of the Eighth Amendment. *McKnight v. Taylor*, No. 12-1684 (RMB), 2012 U.S. Dist. LEXIS 166143, *7 (D.N.J. Nov. 20, 2012). Moreover, a plaintiff must show that a defendant proximately caused his excessive because "a public official is liable under § 1983 only if he causes the plaintiff to be subjected to a deprivation of his constitutional rights." *Id.* (quoting *Baker v. McCollan*, 443 U.S. 137, 142 (1979)). Here, Plaintiff alleges that his $750,000 bail was excessive because the Bergen County Judge was misled into believing that there was probable cause for Plaintiff's arrest when in fact there was not. (Compl. ¶¶ 116). Plaintiff further alleges that DeSantis deliberately misled officials, including the Bergen County Judge, by not revealing the actual source of the anonymous tip, which resulted in the Bergen County Judge setting an inappropriate amount for bail. (*Id.* ¶ 199). Accepting these statements as true at this point in the proceeding, Plaintiff has sufficiently plead a *prima facie* cause of excessive bail. Therefore, the Court denies DeSantis' Motion to Dismiss Count VIII.

  *f. Substantive Due Process*

The Fourteenth Amendment to the United States Constitution, Section 1, guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." A substantive due process violation is the deprivation of a protected interest involving an abuse of official power that "shocks the conscience." *United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 399 (3d Cir. 2003). One such protected interest is fundamental rights, which include those guaranteed by the Bill of Rights, as well as certain liberty and privacy interests implicitly protected by the Due Process Clause. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). With respect to this case, Plaintiff is asserting that DeSantis deprived him of his Fourth and Fourteenth Amendment rights by participating in Plaintiff's wrongful arrest, detention, and

false imprisonment. (Compl. ¶ 204). Plaintiff asserts that these actions deprived him of his fundamental right to liberty. (*Id.*). Furthermore, Plaintiff alleges that DeSantis acted in a way that "shocks the conscience" by fabricating evidence in order to support Plaintiff's arrest and prosecution for offenses he did not commit. (*Id.* ¶¶ 206–08). These allegations are sufficient to show that Plaintiff has been deprived a liberty interest in violation of substantive due process. Therefore, the Court denies DeSantis' Motion to Dismiss Count IX.

### g. *Supervisory Liability*

For supervisory liability, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondent superior*. *Iqbal*, 129 S. Ct. at 1948. However, a defendant may be held liable for actions taken in their individual capacity if: (1) as policymakers, they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm"; or (2) they "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [their] subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Here, Plaintiff has made no showing that DeSantis was a supervising officer or controlled, trained, or designed policies for any other law enforcement officers in the Complaint. (Compl. ¶¶ 146–151). Therefore, Plaintiff has not alleged a *prima facie* case of supervisory liability against DeSantis, and the Court grants DeSantis' Motion to Dismiss Count II.

### h. *Unlawful Policy*

Count VII of the Complaint alleges § 1983 *Monell* liability against all Defendants. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), the United States Supreme Court held that:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible § 1983.

*Id.*

The Supreme Court has also concluded that *Monell* liability only attaches where "the decision maker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. Cincinnati*, 475 U.S. 469, 482 (1986). Moreover, the Court held that §1983 municipal liability attaches only where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483. In this case, however, Plaintiff has not alleged any facts that show that DeSantis was a decision maker, policy maker, or supervisor. (Compl. ¶¶ 180–192). The record only shows that DeSantis was a PSP Trooper, (*Id.* ¶ 7), and not someone with "final authority to establish municipal policy" with respect to Plaintiff's arrest and detainment. *See Pembaur*, 475 U.S. at 482. Therefore, Plaintiff has failed to sufficiently plead a *Monell* claim for unlawful policy and the Court grants DeSantis' Motion to Dismiss Count VII.

    i. *False Imprisonment/False Arrest*

Finally, the Court concludes that Plaintiff's false imprisonment/false arrest claim is time barred. New Jersey's statute of limitations for personal injury torts governs the statute of limitation for § 1983 claims arising in New Jersey. *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989). Therefore, § 1983 claims arising in New Jersey have a two-year statute of limitations. *Montgomery v. DeSimone*, 159 F.3d 120, 126 (3d Cir. 1998). Furthermore, it is well settled that the statute of limitations for a false arrest/false imprisonment claim begins to run once the plaintiff is detained pursuant to legal process. *Wallace v. Kato*, 549 U.S. 384, 391 (2007). In

this case, it is unclear when Plaintiff was arraigned, but he was detained in August 2014 and indicted in December 2014 after being arraigned. (Compl. ¶ 117). Thus, the latest charges could have been brought was December 2016. However, Plaintiff's Complaint was not filed until July 13, 2017. (*See* Compl.). Therefore, Plaintiff's false arrest claim is time barred and the Court grants DeSantis' Motion to Dismiss Count I.

## **CONCLUSION**

For the aforementioned reasons, the Court grants the Monroe Defendant's and Molinelli's Motions to Dismiss all claims against them. Furthermore, the Court grants DeSantis' Motion to Dismiss Counts I, II, and VII, but denies the Motion as to Counts III, IV, V, VI, VIII, and IX. An appropriate Order follows this Opinion.

Dated: November 15, 2017

JOSE L. LINARES
Chief Judge, United States District Court