UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN PRUNKEL,<br><br>      Plaintiff,<br><br>v.<br><br>COUNTY OF BERGEN; BERGEN COUNTY SHERIFF MICHAEL SAUDINO; BERGEN COUNTY SHERIFF DSGT M. GRANATA; BERGEN COUNTY SHERIFF DETECTIVE JOHN DILKES; TROOPER N. DESANTIS; VILLAGE OF RIDGEFIELD PARK; DETECTIVE WILLIAM E. MORTON, IV; JOHN DOES # 1-5; JOHN DOES # 6-10, and JOHN DOES # 11-15<br><br>      Defendants. | CASE NO: 2:17-cv-05154-JLL-SCM<br><br>CIVIL ACTION<br><br>**FIRST AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiff, Steven Prunkel ("Plaintiff"), residing at 211 Chickadee Way, East Stroudsburg, Pennsylvania, by way of his First Amended Complaint against defendants, County of Bergen, Bergen County Sheriff Michael Saudino, Bergen County Sheriff DSGT M. Granata, Bergen County Sheriff Detective John Dilkes, Trooper N. Desantis, Village of Ridgefield Park, Detective William E. Morton IV, John Does # 1-5, and John Does # 6-10 (collectively "Defendants") as follows:

## THE PARTIES

1. Plaintiff is an individual who suffered significant physical and emotional injury arising out of numerous civil rights violations by the Defendants including unlawful arrest and imprisonment for more than one year and malicious prosecution in violation of his rights guaranteed by the laws and Constitution of the United States and the State of New Jersey.

2. Defendant, County of Bergen, is a County Government formed under the laws of the State of New Jersey with the power to sue and be sued, having an address at 10 Main Street, Hackensack, New Jersey. Bergen County has adopted a policy and/or otherwise allowed and/or tolerated conduct and policies by its officers and agents that has resulted in the violation of the Constitutional rights of individuals, including Plaintiff.

3. Defendant, Michael Saudino, the Bergen County Sheriff having an address at 10 Main Street, Hackensack, New Jersey, is vested with the power granted under the New Jersey State Constitution, State Statute and Administrative Regulation. Sheriff Saudino is the executive and administrative head of the Bergen County Sheriff's Office and is responsible for the training and supervision of members and employees of the Bergen County Sheriff's Office. At all times, Sheriff Saudino was charged with the duty to implement policies, practices, procedures and customs in compliance with the Constitution and Laws of the State of New

Jersey. Sheriff Saudino implemented, instituted and tolerated a policy, custom and practice at the Sheriff's Department which resulted in the violation of the Constitutional rights of individuals. Defendant Saudino is sued in his individual capacity and in his official capacity as an officer and agent of the County of Bergen.

4. Defendant Bergen County Sheriff's Detective John Dilkes, having an address at 10 Main Street, Hackensack, New Jersey, is or was an officer of the Bergen County Sheriff's Department who participated in and carried out the unlawful acts against Plaintiff. Defendant Dilkes is sued in his individual capacity and in his official capacity as an officer and agent of the County of Bergen.

5. Defendant Bergen County Sheriff's Officer DSGT M. Granata, having an address at 10 Main Street, Hackensack, New Jersey, is or was an officer of the Bergen County Sheriff's Department who participated in and carried out the unlawful acts against Plaintiff. Defendant Granata is sued in his individual capacity and in his official capacity as an officer and agent of the County of Bergen.

6. Defendants John Does # 1-5, fictitious names, having an address at 10 Main Street, Hackensack, New Jersey, are those individual supervising members of the Bergen County Sheriff's Department who were on duty at the time of the events described

herein, were involved in the investigation and were those supervising officers who adopted and/or allowed the unlawful policies to be implemented and used to violate the Constitutional rights of Plaintiff. These Defendants are sued both in their individual capacities and in their official capacities as officers of the County of Bergen.

7. Defendant Pennsylvania State Trooper N. Desantis ("Trooper Desantis"), having an address at 113 Enforcer Lane, Swiftwater, Pennsylvania, is or was an officer of the Pennsylvania State Police. Defendant Trooper Desantis is sued in his individual capacity.

8. Defendant Village of Ridgefield Park ("Ridgefield Park") is a municipal entity having an address at 234 Main Street, Ridgefield Park, New Jersey. Defendant Ridgefield Park is the municipal entity that organizes, operates and controls the Ridgefield Park Police Department.

9. Defendant Ridgefield Park Police Detective William E. Morton, IV ("Detective Morton"), having an address at 234 Main Street, Ridgefield Park, New Jersey, is or was an officer of the Ridgefield Park Police Department who participated in and carried out the unlawful acts against Plaintiff. Detective Morton is sued in his individual capacity and in his official capacity as a detective, officer and agent of the Ridgefield Park Police Department.

10. Defendants, John Does # 6-10 (fictitious names) are unknown individual(s) who are/were other duly sworn members of the Ridgefield Park Police Department, Bergen County Sheriff's Office, and Pennsylvania State Police who participated in the unlawful conduct set forth infra and undertook such actions under color of state law.

11. Defendants, John Does # 11-15 (fictitious names) are unknown individual(s) who are/were supervisors, or held supervisory authority over the Defendant Ridgefield Park, Monroe County, Bergen County, and/or were the commanding officers and/or participated in, were aware of and/or expressly or tacitly participated in or approved the conduct giving rise to Plaintiff's claims. Defendants John Does # 11-15 were at all times responsible for implementing policies and protocol as provided by the law and the constitution, for disciplining subordinates, training, hiring, and/or making other discretionary decisions. Defendants John Does # 11-15 are sued in their individual and official capacities.

12. All individual Defendants are being sued in their individual and official capacities except where otherwise designated herein.

12. At all relevant times, all Defendants acted under the color of state law of the State of New Jersey and/or the Commonwealth of Pennsylvania.

13. All Defendants acted in concert with one another to conspire to violate the civil and Constitutional rights of Plaintiff.

## JURISDICTION AND VENUE

14. The Court has personal jurisdiction over the Defendants in this matter by virtue of Plaintiff's causes of action arising out of Defendants' contacts with and actions in New Jersey.

15. The Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. § 1333 as the complaint sets forth claims for civil rights violations pursuant to the United States Constitution and federal statute, 42 U.S.C. § 1983. Subject matter jurisdiction is established by virtue of the federal question presented by the claims.

16. Venue is proper in the United States District Court for the District of New Jersey, Newark, pursuant to 28 U.S.C. § 1391 because the incidents giving rise to the causes of action took place within the District.

## FACTS COMMON TO ALL COUNTS

17. Plaintiff repeats each and every allegation of the preceding paragraphs as though fully set forth herein.

18. On August 6, 2014 Plaintiff was arrested by the Ridgefield Park Police at his place of employment, Star Candle, in Ridgefield Park, New Jersey.

19. At the time of his arrest, Plaintiff worked at Star Candle Company as a machinist in its large factory located at 300 Industrial Avenue, Ridgefield Park, New Jersey.

20. Plaintiff was arrested and charged with 21 counts of unlawful possession of assault weapons, possession of weapons by a felon, as well as other weapons-related charges.

**Monroe County Investigation Background**

21. The arrest undertaken by defendant Ridgefield Park Police Department officers, was based on an investigation conducted by the Monroe County District Attorney ("MCDA"), the Pennsylvania State Police (hereinafter "PSP"), and the Bergen County Sheriff's Department (hereinafter "BCSD").

22. That investigation was launched based on information provided to the MCDA and the PSP by a witness who was being investigated in connection with his role in shooting the Plaintiff several months earlier and who alleged that Plaintiff had purchased guns illegally using the witness as a straw man.

23. It was not reasonable for the aforementioned Defendant authorities to rely on the statement of the witness because at the time he made those statements he stood accused of the attempted murder of Plaintiff.

24. The investigation began in East Stroudsburg, Pennsylvania after Plaintiff was the victim of a shooting on July 29, 2013.

25. The incident resulted in Plaintiff being shot two times at close range with a shotgun by Kevin Lasch after an argument at the home of Lasch.

26. Plaintiff, who was unarmed, was gravely injured in the shooting and was hospitalized for several weeks in Pennsylvania where he was treated for various serious injuries and loss of blood.

27. After the shooting, Lasch was neither held by Police nor charged with any crime in Pennsylvania.

28. Instead, several months after his near-fatal shooting of Plaintiff, Lasch was interviewed by the PSP and MCDA, as part of the grand jury investigation of the shooting.

29. Prior to his testimony, the PSP and the MCDA granted Lasch use and derivative immunity for all testimony offered during the interview.

30. Instead of questioning Lasch about his role in the shooting that nearly killed Plaintiff, the Pennsylvania State and County investigators asked him only about alleged gun purchases he made at gun shows over the course of several months.

31. With the immunity in place, Lasch told investigators from the PSP and MCDA that he had purchased guns for Plaintiff at various gun shows with money provided by Plaintiff and with Lasch filling out the applications for such purchases.

32. Lasch testified that all of the guns he had purchased were purchased for Plaintiff and that none of the guns belonged to Lasch.

33. During his investigation interview with the PSP, Lasch admitted to committing several felonies, including falsifying a gun application and lying to authorities about the owner of certain weapons.

34. The PSP and MCDA investigators did not ask Lasch to explain any aspect of the shooting at his home in which Plaintiff was nearly killed.

35. Not one question was asked of Lasch about the circumstances surrounding the near-fatal shooting of Plaintiff.

36. At the time Lasch was interviewed, PSP and MCDA were aware that Plaintiff had testified at length with the investigators in Pennsylvania regarding the attempted murder by Lasch.

37. Plaintiff had told investigators about the attempted murder and the events leading up to the time that Lasch shot him twice with a shotgun.

38. The PSP and the MCDA had knowledge at the time of the investigation that Lasch had shot and seriously injured Plaintiff in 2013.

**Plan To Arrest Plaintiff**

39. Based solely on the information Lasch provided to the PSP and the MCDA, the Pennsylvania authorities organized a raid

9

for the purpose of arresting Plaintiff and charging him with 21 felony gun charges in New Jersey.

40. The raid and arrest of Plaintiff in Ridgefield Park, New Jersey was coordinated by PSP, MCDA, the BCSD and Ridgefield Park Police with the objective being to make it appear that the arrest was based on an anonymous tip received by PSP about Plaintiff.

41. As part of the plan, PSP communicated with the BCSD and stated that they were investigating someone (Plaintiff) who worked in a Bergen County factory relating to gun charges.

42. In connection with the plan, BCSD placed two of its officers as undercover agents in the Star Candle Factory in Ridgefield Park, where Plaintiff worked.

43. The BCSD identified themselves as "employees" of Star Candle to the Ridgefield Park Police at the time of the raid and arrest of Plaintiff.

44. The owner of Star Candle did not authorize undercover officers to be placed in his factory for the purposes of any investigation and he was unaware that BCSD officers were operating in his factory.

45. BCSD and the PSP planned the raid along with the MCDA to take place at the Ridgefield Park location in New Jersey.

46. In coordinating the investigation and using the undercover officers in New Jersey, the MCDA and PSP communicated directly and solely with BCSD.

47. The standard procedure in place for such an investigation requires the MCDA and PSP to contact the Bergen County Prosecutor's Officer during the investigation prior to placing the officers in Star Candle and conducting the raid.

48. MCDA and PSP failed to follow the standard procedure by failing to contact the Bergen County Prosecutor's Office or otherwise involving that office in its activities prior to the arrest of Plaintiff.

49. MCDA and PSP did not contact the Bergen County Prosecutor's Office because those offices did not want the Bergen County Prosecutor's Office to know of the improper and illegal means by which Plaintiff was framed and otherwise wrongly arrested and detained.

50. By virtue of contacting the BCSD Office directly, MCDA and PSP were not required to explain the basis for their investigation, the source of the anonymous tip or the source of the recovered firearms.

51. Nevertheless, PSP and BCSD organized and planned the raid in which Plaintiff was charged and detained.

52. On or about August 6, 2014, PSP Trooper N. Desantis reported to Detective Morton that PSP had received an anonymous e-mail tip relating to Plaintiff.

53. The email stated "Steven Prunkel is storing assault firearms at Star Candle". The tip stated that the "assault

firearms would be in a wooden crate under a red cooler near the area that Prunkel works in."

54. After receiving the e-mail, PSP contacted Ridgefield Park Police (Detective Morton) and advised that they had received the anonymous tip regarding Plaintiff and alleged guns stored at the Star Candle facility.

55. The tip was reported to Ridgefield Park Police by PSP at 2:40 p.m.

56. Once again, PSP bypassed communication with the Bergen County Prosecutor's Office at that time and directly contacted BCSD and Ridgefield Park Police Department. This was contrary to standard operating procedure and it allowed PSP to coordinate the arrest and detention of Plaintiff without providing credible evidence to the Bergen County Prosecutor's Office.

**Arrest of Plaintiff**

57. Within one hour of receiving the e-mail, Ridgefield Park Police directed several of its police units to respond to Star Candle for the purpose of arresting Plaintiff.

58. Ridgefield Park Police Department did not conduct any investigation on its own to determine the validity of the information allegedly provided by the anonymous e-mail.

59. Ridgefield Park Police did not request or obtain any information about the source of the anonymous e-mail.

60. At no time prior to the response at Star Candle did PSP, BCSD, Ridgefield Park Police, or Detective Morton contact the Bergen County Prosecutor's Office regarding Plaintiff or the alleged probable cause for his arrest.

61. Before the raid and arrest of Plaintiff, the Bergen County Prosecutor's Office did not review the testimony of Lasch that was the basis for the investigation commenced by Pennsylvania authorities or Plaintiff's testimony in Pennsylvania.

62. The PSP advised the Ridgefield Park Police that it had received an anonymous tip from MCDA's Office which purportedly stated that "Steven Prunkel is storing assault firearms at Star Candle".

63. Neither the PSP nor the MCDA conducted any investigation into the source or validity of the anonymous tip received in Pennsylvania.

64. None of the Defendants confirmed whether the tip was accurate or derived from a person with actual knowledge of the situation.

65. Instead, Defendants carried out the raid at Star Candle without any additional evidence or probable cause than the anonymous tip received in Pennsylvania.

66. The anonymous tip had been provided by Lasch in Pennsylvania to the PSP and/or the MCDA. The tip was provided by