**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| STEVEN PRUNKEL, | Civil Action No.: 17-5154 (JLL) |
| Plaintiff, | **OPINION** |
| v. |  |
| COUNTY OF BERGEN, *et al.*, |  |
| Defendants. |  |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendants William E. Morton, IV and the Village of Ridgefield Park's (collectively, "Ridgefield Park Defendants") Motion to Dismiss for Failure to State a Claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), and Defendant N. DeSantis' Motion to Dismiss for Lack of Personal Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF Nos. 46, 47). Defendant DeSantis also filed a separate Motion to Dismiss all Cross-Claims against him for Lack of Personal Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 68). Plaintiff has opposed both motions filed against him, and Ridgefield Park Defendants and Defendant DeSantis have replied thereto. (ECF Nos. 65, 66, 67, 69). Defendants and Cross-Claimants County of Bergen, Sheriff Michael Saudino, Detective Sergeant Granata, and Detective Dilkes (collectively, "Cross-Claimants") have not responded to Defendant DeSantis' Motion to Dismiss their Cross-Claims within the time permitted under the Federal Rules of Civil Procedure and the Local Civil Rules.[1] The Court decides this matter without

---

[1] Defendant DeSantis' Motion to Dismiss the Cross-Claims against him was filed on May 14, 2018, making it originally returnable on June 16, 2018 and Cross-Claimants Opposition due on June 4, 2018.

oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court denies Ridgefield Park Defendants and Defendant DeSantis' Motions to Dismiss, with the exception that Plaintiff's claim for excessive bail shall be dismissed as time-barred.

## I.     BACKGROUND[2]

On July 29, 2013, Plaintiff was shot by a man named Kevin Lasch in Pennsylvania. (FAC ¶¶ 24–26). Months later, Lasch was interviewed by the Pennsylvania State Police ("PSP") in connection with the shooting. (FAC ¶ 28). However, allegedly instead of questioning Lasch about the shooting, the PSP "asked him only about alleged gun purchases he made at gun shows over the course of several months," and the prosecutor's office apparently granted him use and derivative use immunity for the statements he made during the aforesaid interview. (FAC ¶¶ 29–30). Plaintiff claimed that Lasch allegedly told the PSP that he filled out applications and purchased guns at gun shows for Plaintiff. (FAC ¶ 31). Lasch further explained that the guns were bought with money provided by Plaintiff, and that the guns belonged solely to Plaintiff. (FAC ¶¶ 31–32). Despite being aware that Lasch shot and nearly killed Plaintiff, the PSP allegedly did not ask Lasch a single question regarding same. (FAC ¶¶ 34–38).

After receiving this information, the PSP contacted the Bergen County Sheriff's Department ("BCSD"), which Plaintiff claims violated the standard procedure of first contacting the Bergen County Prosecutor's Office. (FAC ¶¶ 41, 47–50). According to Plaintiff, the PSP coordinated with the BCSD to "move guns from Lasch's possession in Pennsylvania to the Star Candle facility," where Plaintiff worked. (FAC ¶ 68). The PSP then allegedly directed Lasch to

---

[2] This background is derived from Plaintiff's First Amended Complaint ("FAC"), (ECF No. 45), which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009). The Court notes that Plaintiff failed to file the last twelve pages of his Amended Complaint, though the full Amended Complaint was sent to all parties prior to its filing. (*See* ECF Nos. 45, 54). Upon realizing this error, Plaintiff filed the complete Amended Complaint on the docket. (ECF No. 54). Therefore, the Court will cite to "FAC" and the relevant paragraph as they appear in ECF No. 54-1.

send them an "anonymous" email tip, stating that Plaintiff was storing a crate full of assault firearms at his work station in the New Jersey based Star Candle factory. (FAC ¶¶ 53, 66, 73). The PSP and other Defendants, according to Plaintiff, hid the fact that the tip was actually provided by Lasch, who clearly had animus against Plaintiff, in order to make it appear that they had probable cause for Plaintiff's arrest. (FAC ¶¶ 40, 66, 129).

On or around August 6, 2014, Defendant DeSantis, a PSP Trooper, reported to Defendant Morton, a Ridgefield Park Police Detective, that the PSP had received an anonymous email tip, which stated that Plaintiff was storing weapons in the factory where he worked. (FAC ¶¶ 52–55). Plaintiff alleges that without investigating the validity of the anonymous email tip or contacting the Bergen County Prosecutor's Office, the Ridgefield Park Police sent several units to the Star Candle factory. (FAC ¶¶ 57–61). The owner of the Star Candle factory gave consent for the Ridgefield Park Police to search the facility. (FAC ¶ 74). The officers went directly to Plaintiff's work station, where they discovered a crate containing rifles and handguns. (FAC ¶¶ 75–78). At the time the weapons were discovered, Plaintiff was still suffering injuries as a result of the shooting perpetrated by Lasch, and claims that he was unable to lift the heavyweight crate filled with guns. (FAC ¶ 79). Upon discovering the weapons, the Ridgefield Park Police immediately detained Plaintiff. (FAC ¶ 81).

After Plaintiff was detained, Defendant Morton contacted the PSP for further information relating to Plaintiff. (FAC ¶¶ 83, 86). Defendant DeSantis informed Defendant Morton that there was an investigation into Plaintiff and another individual for illegal firearm purchases, and that Plaintiff was prohibited from possessing firearms due to a prior conviction. (FAC ¶¶ 84–85, 87). Defendant DeSantis further advised Defendant Morton that Plaintiff used a straw buyer—Lasch— to purchase the guns, and that Lasch had previously shot Plaintiff. (FAC ¶¶ 88–91). Defendant

DeSantis also advised Defendant Morton that Lasch was the source of the tip. (FAC ¶ 88). Allegedly based solely on this information, Plaintiff was arrested and charged with multiple weapons offenses, including possession of firearms by a felon. (FAC ¶ 93).

Following his arrest, the Bergen County Prosecutor's Office indicted Plaintiff, relying on the information provided by the PSP and Ridgefield Park Police. (FAC ¶¶ 111, 114). According to Plaintiff, the Bergen County Prosecutor's Office was unaware that Lasch was the source of the anonymous tip. (FAC ¶ 112). After his initial appearance in the Superior Court of Bergen County, Plaintiff was incarcerated at Bergen County Jail from August 6, 2014 to September 2015. (FAC ¶¶ 116, 118). Plaintiff claims to have suffered physical and psychological pain during his time at the Bergen County Jail, in part because he was still recovering from the injuries he sustained when he was shot by Lasch. (FAC ¶¶ 118–19). Plaintiff was hospitalized on two occasions while in jail, but did not receive psychological counseling. (FAC ¶¶ 120–21). During his confinement, Plaintiff requested discovery related to his case, including the source of the anonymous tip that led to his arrest, but the Bergen County Prosecutor's Office did not provide him with said information. (FAC ¶¶ 122–24). Allegedly the only evidence that was produced to Plaintiff was the serial numbers of the guns, which were registered to Lasch and not to Plaintiff. (FAC ¶¶ 95–96, 127).

In September 2015, Plaintiff appeared before the Superior Court of New Jersey, Bergen County, and was advised that all charges against him had been dropped by the Bergen County Prosecutor's Office, without further explanation. (FAC ¶¶ 133–34). According to Plaintiff, the only evidence that linked him to the crate of guns was the "anonymous" tip which was actually provided by Lasch, a noncredible source who previously attempted to murder Plaintiff. (FAC ¶¶ 114, 129). Plaintiff further claims that Defendants named in this case intentionally withheld this potentially exonerating information. (FAC ¶¶ 40, 132). Moreover, Plaintiff claims that

Defendants in this case placed the crate of guns near his work station in an attempt to frame him and hide their lack of probable cause. (FAC ¶¶ 68–70).

Accordingly, Plaintiff brought this action on July 13, 2017. (ECF No. 1). On February 28, 2018, Plaintiff filed the Amended Complaint, asserting the following causes of action: Supervisory Liability (Count II); Abuse of Process (Count III); Malicious Prosecution (Count IV); Failure to Intervene (Count V); Conspiracy (Count VI); Unlawful Policy, Custom, and Supervision (Count VII); Excessive Bail/Cruel and Unusual Punishment (Count VIII); and Due Process (Count IX). (FAC ¶¶ 139–202).[3] Cross-Claimants answered the Amended Complaint and filed cross-claims against Defendant DeSantis for contribution and indemnification. (ECF No. 62 at 24).

## II.  **LEGAL STANDARD**

### A. Failure to State a Claim

To withstand a motion to dismiss for failure to state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the Court must take three steps. "First, it must tak[e] note of the elements [the] plaintiff must plead

---

[3] Plaintiff's first cause of action for false arrest/imprisonment (formerly, Count I) was dismissed in the Court's November 15, 2017 Opinion and Order granting in part and denying in part Defendant DeSantis' Motion to Dismiss the Initial Complaint. (ECF Nos. 39, 40).

to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations and citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## B. Personal Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(2), the Court must dismiss a cause of action if it does not have personal jurisdiction over the Defendant. "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing Fed.R.Civ.P. 4(e)). New Jersey's long-arm statute allows a court to exercise personal jurisdiction over non-resident defendants to the full extent allowed under the due process requirements of the United States Constitution. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (citing *Mesalic v. Fiberfloat Corp.*, 897 F. 2d 696, 698, n.5 (3d Cir. 1990)); *see also* N.J. Ct. R. 4:4-4 (authorizing personal jurisdiction "consistent with due process of law"). Under the United States Constitution, personal jurisdiction over an out-of-state defendant is permitted only when "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Accordingly, it is not necessary for the defendant to be physically present in the forum for personal jurisdiction to exist, rather "[p]ersonal

jurisdiction under the Due Process Clause depends upon 'the relationship among the defendant, the forum, and the litigation.'" *IMO Indus.*, 155 F.3d at 259 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

There are two situations where personal jurisdiction may be asserted over a nonresident defendant. *Dollar Sav. Bank v. First Sec. Bank, N.A.*, 746 F.2d 208, 211 (3d Cir. 1984). First, "'general jurisdiction' is present when the cause of action does not arise out of or is unrelated to the defendant's contacts with the forum." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8–9 (1984)). General jurisdiction refers to a court's power to "hear any and all claims" against an out-of-state entity or person when its "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotations and citations omitted). Moreover, this requires that the plaintiff demonstrate "significantly more than mere minimum contacts." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987) (citations omitted).

Second, "specific jurisdiction," by contrast to general jurisdiction, refers to a court's power to hear claims that "'arise[ ] out of' a defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414 (quoting *Schaffer*, 433 U.S. at 204). Specific jurisdiction satisfies due process when the defendant "has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros*, 466 U.S. at 414 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotations omitted). Therefore, in order for the Court to properly exercise specific jurisdiction, a plaintiff must first establish the defendant's minimum contacts with the forum and, assuming the plaintiff fulfills this burden, the Court must next inquire into whether "the assertion of personal jurisdiction

would comport with 'fair play and substantial justice.'" *Burger King Corp.*, 471 U.S. at 476 (quoting *Int'l Shoe Co.*, 326 U.S. at 320).

In establishing minimum contacts, the plaintiff must demonstrate that the defendant's minimum contacts with the forum are sufficient for the defendant to "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted). What constitutes minimum contacts depends on "the quality and nature of the defendant's activit[ies]." *Hanson*, 357 U.S. at 253. Next, in determining if the exercise of personal jurisdiction comports with the notions of fair play and substantial justice, a court must assess if it is reasonable to require the defendant to defend suit in the forum state. *World-Wide Volkswagen*, 444 U.S. at 292 (citing *Int'l Shoe*, 326 U.S. at 317). To evaluate reasonableness, a court accounts for the following considerations: "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering substantive social policies." *Knierim v. Siemens Corp.*, Civ. Action No. 06-4935, 2008 WL 906244, at *6 (D.N.J. Mar. 31, 2008) (citing *World-Wide Volkswagen*, 444 U.S. at 292).

Once defendant raises the defense of lack of personal jurisdiction, "the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992) (citations omitted). Furthermore, Plaintiff must prove that personal jurisdiction exists "by affidavits or other competent evidence." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996) (citations omitted). However, if the District Court does not hold an evidentiary hearing concerning the appropriateness of exercising personal jurisdiction, "the plaintiff need only establish a *prima facie* case of personal

jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d at 97 (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)).

## III.   ANALYSIS

### A. Ridgefield Park Defendants

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Therefore, to state a claim for relief under § 1983, a plaintiff must allege two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pa.*, 36 F.3d 1250, 1255–56 (3d Cir. 1994). Plaintiff also asserts claims under the NJCRA. (*See generally* FAC). A person may bring a civil action under the NJCRA in two circumstances: "(1) when he's deprived of a right, or (2) when his rights are interfered with by threats, intimidation, coercion, or force." *Felicioni v. Admin. Office of Courts*, 404 N.J. Super. 382, 400 (App. Div. 2008). The NJCRA was modeled after § 1983, and thus courts in New Jersey have generally looked at claims under the NJCRA "through the lens of § 1983." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443–44 (D.N.J. 2011); *see also Chapman v. New Jersey*, Civil No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart

. . . ."); *Armstrong v. Sherman*, Civ. No. 09-716, 2010 WL 2483911, at *5 (D.N.J. June 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983."). Accordingly, the Court will apply the same analysis for both Plaintiff's § 1983 and NJCRA claims.

Here, Ridgefield Park Defendants raise three arguments in support of their Motion to Dismiss: (1) that Plaintiff's claims are time-barred; (2) that they were only involved in Plaintiff's arrest and therefore Plaintiff has failed to state a claim against them; and (3) that they are entitled to qualified immunity. (*See generally* ECF No. 46-2). With the exception of Plaintiff's claim for excessive bail, which the Court finds is time-barred, the Court rejects Ridgefield Park Defendants' arguments for the reasons articulated below.

1. <u>Statute of Limitations</u>

A cause of action arising under § 1983 accrues "when the plaintiff knew, or should have known, of the injury forming the basis of [the] action." *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1988). While § 1983 does not contain a statute of limitations, the Supreme Court in Wilson explained that the statute of limitations for § 1983 claims is governed by the forum State's statute of limitations governing tort actions. *Wilson v. Garcia*, 471 U.S. 261, 267 (1985). Moreover, the personal injury statute of limitation applies even if the forum State has a different statute of limitations for intentional torts. *See Owens v. Okure*, 488 U.S. 235, 236 (1989). In New Jersey, personal injury actions are subject to a two-year statute of limitations, which the Third Circuit has held is applicable to § 1983 claims brought in New Jersey. *See* N.J.S.A. 2A:14-2a; *see also Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989).

On the other hand, federal law governs what constitutes accrual for purposes of the statute of limitations. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). Accrual occurs when a plaintiff has "a complete and present

cause of action," or put differently, "when 'the plaintiff can file suit and obtain relief.'" *Id.* (quoting *Wallace*, 549 U.S. at 388). Therefore, Plaintiff's claim accrues, and the statute of limitations begins to run, at the time that Plaintiff suffered damages from Defendant's wrongful conduct. *Id.* (quoting *Wallace*, 549 U.S. at 391). This accrual date differs depending on the claim asserted. For example, a cause of action under § 1983 for abuse of process accrues at the time of Plaintiff's arrest, while a cause of action under § 1983 for malicious prosecution or conspiracy to commit same accrues when the prosecution resolves in Plaintiff's favor. *Rose v. Bartle*, 871 F.2d 331, 351–52 (3d Cir. 1989).

Ridgefield Park Defendants argue that the two-year statute of limitations for all of Plaintiff's claims accrued when he was arrested, on August 6, 2014. (ECF No. 46-2 at 4–5). Therefore, Ridgefield Park Defendants assert that the statute of limitation expired before the Complaint was filed on July 13, 2017. (*Id.*). However, several of Plaintiff's claims, such as his claims for malicious prosecution or conspiracy to commit same, did not accrue until after the prosecution against Plaintiff ended in his favor, which was in September of 2015 and within the two-year statute of limitations period, (FAC ¶¶ 133–34). *Rose*, 871 F.2d at 351. Furthermore, and as discussed in more depth below, *infra* Section III.2., Plaintiff's claims for supervisory liability, failure to intervene, unlawful policy, and due process require an underlying violation of Plaintiff's constitutionally protected rights. *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004); *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002); *Monell v. Dep't of Soc. Servis.*, 436 U.S. 658, 694 (1978); *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). In as much as these claims relate to the harms Plaintiff suffered due to his prosecution, the Court finds that they did not accrue until Plaintiff's malicious prosecution claim accrued, *i.e.*, when Plaintiff's prosecution was favorably resolved. *See Rose*, 871 F.2d at 352 (applying similar

logic to a claim for conspiracy to commit malicious prosecution). Therefore, Plaintiff's claims of malicious prosecution, conspiracy, supervisory liability, failure to intervene, unlawful policy, and due process are not time-barred.

However, the Court agrees with Ridgefield Park Defendants that Plaintiff's abuse of process and excessive bail claims have expired. As stated above, Plaintiff's claim for abuse of process accrued when he was arrested on August 6, 2014. *See Rose*, 871 F.2d at 351. Plaintiff's arrest was more than two years before Plaintiff brought this suit on July 13, 2017, and thus is outside the statute of limitations. Additionally, Plaintiff claims that he was subjected to bail in an excessive amount in August 2014 in violation of the Eight Amendment, which is also outside of the two-year statute of limitations period. (FAC ¶¶ 116–18). Therefore, excluding the application of any equitable tolling, the Court must dismiss Plaintiff's abuse of process and excessive bail claims as time-barred.

Plaintiff argues that, in the event the Court finds that any of his claims are time-barred, said claims should be equitably tolled through the discovery rule. (ECF No. 65 at 12). Indeed, equitable tolling can be applied to § 1983 claims arising in New Jersey. *Dique*, 603 F.3d at 185. One way a court can toll the accrual date for purposes of the statute of limitations is through the discovery rule, which delays "the accrual of a cause of action until the injured party discovers, or by the exercise of reasonable diligence should discover, that the elements of a claim exist." *Michaels v. State of N.J.*, 955 F. Supp. 315, 326 (D.N.J. 1996) (citations omitted). The elements for an abuse of process claim are that Defendant initiated process with an ulterior motive and took some further act "representing the perversion of the legitimate use of the process." *Simone v. Golden Nugget Hotel & Casino*, 844 F.2d 1031, 1036–37 (3d Cir. 1988) (internal citations omitted). To state an excessive bail claim under § 1983 Plaintiff must allege facts showing that

his bail was excessive in violation of the Eighth Amendment. *McKnight v. Taylor*, No. 12-1684 (RMB), 2012 U.S. Dist. LEXIS 166143, *7 (D.N.J. Nov. 20, 2012).

Here, Plaintiff could not have known that the elements for his abuse of process claim had accrued, as he alleges that he was unaware of Defendants' malicious intent and ulterior motive to frame, arrest, and prosecute him until, at the very least, the prosecution ended in his favor and he determined that allegedly the only evidence against him was the "anonymous" email tip provided by Lasch.[4] (FAC ¶¶ 123, 129–135). Because Plaintiff first discovered he potentially had a cause of action for abuse of process at the earliest in September 2015, said claim is within the two-year statute of limitations. However, it appears obvious to the Court that Plaintiff had reason to know that his bail was allegedly excessive at the same time as said claim accrued, *i.e.* when he received the bail determination in August 2014 that he claims was disproportionate. (FAC ¶ 116). Therefore, the Court will apply the discovery rule to Plaintiff's abuse of process claim, but shall not apply same to his excessive bail claim. Accordingly, Plaintiff's excessive bail claim must be dismissed. Nevertheless, Plaintiff's other claims are timely and Ridgefield Park Defendants' motion is denied to the extent it seeks to dismiss same.

2. <u>Failure to State a Claim</u>

Ridgefield Park Defendants then argue that their involvement in this matter was limited to Plaintiff's arrest and, because the Court already dismissed Plaintiff's false arrest/imprisonment claim, Plaintiff's remaining claims do not apply to them. (*See* ECF No. 46-2 at 5–14). The Court disagrees, in part because Plaintiff's Amended Complaint asserts a broad conspiracy whereby

---

[4] This discovery rule analysis was not applicable to Plaintiff's previous false arrest/imprisonment claim, as Plaintiff was supposedly aware that the crate of guns allegedly did not belong to him and that there was allegedly no basis for his arrest. (FAC ¶¶ 77–81, 99). Furthermore, Courts in the Third Circuit have found that the discovery rule is inapplicable to cases of false arrest/imprisonment, as a plaintiff will know both of the injury and those responsible at the time of his or her arrest. *See Rolax v. Whitman*, 175 F. Supp. 2d 720, 727 (D.N.J. 2001).

Defendants, including Ridgefield Park Defendants, were fully aware that they lacked probable cause for Plaintiff's arrest but framed, arrested, and prosecuted him regardless. (*See generally* FAC). As described in more detail below, and for reasons similar to those articulated in the Court's previous Opinion denying dismissal of these claims, (ECF No. 39 at 12–19), Plaintiff's assertions are sufficient to plead each of his claims under § 1983 and NJCRA.

a. *Supervisory Liability*

For supervisory liability, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676. However, a defendant may be held liable for actions taken in their individual capacity if: (1) as policymakers, they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm"; or (2) they "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [their] subordinates' violations." *A.M. ex rel. J.M.K.*, 372 F.3d at 586. Here, Plaintiff alleges that Defendant Morton was a supervising officer and that Defendant Village of Ridgefield Park controlled, trained, or designed policies for law enforcement officers. (FAC ¶¶ 140–41). Plaintiff further alleges that the policies created by Defendant Village of Ridgefield Park, and enforced by Defendant Morton, failed to properly discipline officers who violated the rights of individuals and gave rise to the harms suffered by Plaintiff. (FAC ¶¶ 142–44). Finally, Plaintiff claims that Ridgefield Park Defendants, and their subordinates, participated in the framing, arresting, and prosecution of Plaintiff in violation of his constitutional rights. (*See generally* FAC). Therefore, Plaintiff has alleged a *prima facie* case for supervisory liability, and Count II survives dismissal.

### b. *Abuse of Process*

As stated above, an abuse of process claim requires a defendant to initiate process with an ulterior motive and take some further act "representing the perversion of the legitimate use of the process." *Simone*, 844 F.2d at 1036–37 (internal citations omitted). Here, Plaintiff's claim meets this criterion, as he has alleged that Ridgefield Park Defendants arrested him, thus initiating process; took the further action of maliciously and intentionally misrepresenting the facts surrounding his arrest; and withheld information regarding the source of the anonymous tip from court officials and prosecutors in order to detain and prosecute Plaintiff. (FAC ¶¶ 132, 147). Furthermore, Plaintiff alleges that Ridgefield Park Defendants acted with the ulterior motive of framing Plaintiff and hiding their own allegedly unlawful conduct and lack of probable cause. (FAC ¶¶ 132, 148). These allegations, when accepted as true at this stage of the proceedings, are sufficient to show a *prima facie* case of abuse of process, and for Count III to survive dismissal.

### c. *Malicious Prosecution*

In order to state a claim for malicious prosecution, a plaintiff must establish that: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir.2003)). The initiation of a proceeding can be shown by a police officer providing misleading or false information to a prosecutor or court official. *Hector v. Watt*, 235 F.3d 154, 164 (3d Cir. 2000) (quoting *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999)); *see also Al-Mohammedi v. City of Buffalo*, 13-CV-1020, 2016 WL 1748264, at *8

(W.D.N.Y. Mar. 29, 2016) ("Initiation or continuation of a proceeding may also be shown where an arresting officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, or withholds relevant and material information.") (citing *Townes*, 176 F.3d at 147).

Here, Plaintiff has pled all the elements for a *prima facie* claim for malicious prosecution. Specifically, Plaintiff alleges that his prosecution was initiated without probable cause because Lasch's information was biased against Plaintiff, and that Plaintiff was falsely imprisoned pending trial as a result of the prosecution. (FAC ¶¶ 114, 118, 129, 132). Plaintiff also alleges that the criminal proceedings in the Bergen County Superior Court ended in his favor when the charges were dismissed without explanation. (FAC ¶¶ 133–34). Plaintiff further alleges that Ridgefield Park Defendants were aware that Plaintiff's arrest was based on a noncredible source, and that they maliciously and intentionally did not reveal this fact to the Bergen County Prosecutor's Office. (FAC ¶¶ 40, 66, 88, 112, 129). Because Plaintiff has sufficiently alleged all the elements for a *prima facie* claim of malicious prosecution, the Court will not dismiss Count IV.

### d. *Failure to Intervene*

"If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (quoting *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986)). An officer is liable only "if there is a realistic and reasonable opportunity to intervene." *Id*. Plaintiff's Amended Complaint meets this standard. Ridgefield Defendants were police officers at the time of Plaintiff's arrest and prosecution. (FAC ¶¶ 8–9). Plaintiff alleges that Ridgefield Park Defendants knew that they lacked sufficient probable cause which imposed a duty on them to intervene in his unjustified arrest and prosecution.

(FAC ¶¶ 67, 161). Plaintiff further alleges his unjustified arrest and prosecution was in violation of his constitutional rights, and Ridgefield Park Defendants' participation in the investigation gave them a reasonable opportunity to intervene. (FAC ¶¶ 92–93, 99). Finally, at no time did the Ridgefield Park Defendants actually intervene in the supposedly unjustified arrest and prosecution of Plaintiff. (FAC ¶¶ 92–93, 132). Therefore, Plaintiff has sufficiently alleged all the necessary elements for a *prima facie* case of failure to intervene.

   e.  *Civil Conspiracy*

Plaintiff also alleges a cause of action for conspiracy under federal and state law. (FAC ¶¶ 164–172). "To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 400 (3d Cir. 2003). Under New Jersey law, a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principle element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005) (quoting *Morgan v. Union Cty. Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 364 (App. Div. 1993), *superseded by statute on other grounds as stated in Michaels v. State of N.J.*, 955 F. Supp. 315 ). Due to the circumstantial nature of the evidence in such cases, "the question whether an agreement exists should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can infer from the circumstances [that the alleged conspirators] had a

meeting of the minds and thus reached an understanding to achieve the conspiracy's objectives."
*Morgan*, 268 N.J. Super. at 365 (internal quotations and citations omitted).

Here, Plaintiff alleges that the PSP, BCDS, and Ridgefield Park Defendants acted in concert to deprive Plaintiff of his constitutionally protected rights. Specifically, Plaintiff alleges that Defendant DeSantis informed Ridgefield Park Defendants that the anonymous tip was actually based on the statements of Lasch, a non-credible source. (FAC ¶¶ 67, 88, 107). Despite this knowledge, Ridgefield Park Defendants acted in concert with the PSP and BCDS to arrest Plaintiff, and hide their lack of probable cause from the Bergen County Prosecutor's Office by claiming that the improper information was obtained through an anonymous email tip. (FAC ¶¶ 40, 112, 116, 132). Plaintiff also alleges that Ridgefield Park Defendants were complicit in framing Plaintiff. (ECF No. 65 at 19; *see also* FAC ¶¶ 75, 92, 94 (stating that the Ridgefield Park Defendants did not obtain other evidence and knew where the crate of guns was located)). These actions led to Plaintiff's prosecution and deprived him of constitutionally protected rights, including his right to liberty. (FAC ¶¶ 118–19, 171). Thus, Plaintiff's Amended Complaint sufficiently alleges that Ridgefield Park Defendants and at least one other Defendant jointly decided to deprive Plaintiff of his rights by unlawful means and took overt actions to accomplish their goal. Accordingly, Plaintiff has pled a *prima facie* cause of action for conspiracy.

*f. Unlawful Policy, Custom, and Supervision*

Plaintiff asserts a claim of unlawful policy, custom, and supervision against Defendant Village of Ridgefield Park but not against Defendant Morton, (FAC at p. 31), and therefore the Court will discuss only Defendant Village of Ridgefield Park in this section. For Count VII,

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those

whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. Dep't of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 694 (1978). The Supreme Court has stated that *Monell* liability only attaches "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. Cincinnati*, 475 U.S. 469, 482 (1986).

Here, Plaintiff alleges that Defendant Village of Ridgefield Park is vested with supervisory authority and is responsible for the policy and training of its officers. (FAC ¶ 174). Furthermore, Plaintiff alleges that the policies and training provided by Defendant Village of Ridgefield Park permitted Defendants in this case to engage in improper and/or unlawful conduct by arresting and framing Plaintiff, and that Defendant Village of Ridgefield Park does not have an adequate policy regarding the investigation of said conduct. (FAC ¶¶ 176–77). Defendant Village of Ridgefield Park supposedly cultivated and enforced a policy and culture that allowed its officers to abuse the rights of civilians, based on Defendant Village of Ridgefield Park's failure to discipline, sanction, and/or terminate offending officers. (FAC ¶¶ 178–80).

Specifically, Plaintiff alleges that Defendant Village of Ridgefield Park was "aware of numerous police-citizen encounters" in which its officers "customarily and frequently subjected citizens to baseless arrests, . . . intentionally, recklessly and/or negligently misrepresented facts of investigation[s] . . . falsified police and/or other official reports," and made "false or misleading statements to judges, prosecutors and court personnel." (FAC ¶¶ 178, 180). Despite its awareness of this conduct, Defendant Village of Ridgefield Park had a custom or practice of failing to investigate, covering up, or otherwise ignoring said conduct. (FAC ¶ 176). Though the Court is aware that Plaintiff's allegations are broad, they sufficiently support the kind of systemic violation required for a *Monell* claim, and any further inquiry into their validity should be reserved for a

later stage of the litigation, *i.e.*, summary judgment. Therefore, when taking these allegations as true at this stage of the proceedings, Plaintiff has sufficiently alleged a *prima facie* claim for unlawful policy, custom, and supervision in order to survive dismissal.

       g.  *Substantive Due Process*

The Fourteenth Amendment to the United States Constitution, Section 1, guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." A substantive due process violation is the deprivation of a protected interest involving an abuse of official power that "shocks the conscience." *See United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 399 (3d Cir. 2003). One such protected interest is fundamental rights, which include those guaranteed by the Bill of Rights, as well as certain liberty and privacy interests implicitly protected by the Due Process Clause. *Washington*, 521 U.S. at 720. In this case, Plaintiff asserts that he was deprived his fundamental right to liberty by being falsely arrested and prosecuted for an offense he did not commit. (FAC ¶¶ 170–71, 198–200). Furthermore, Plaintiff claims that Ridgefield Park Defendants acted in a way that "shocks the conscious" by participating in a conspiracy to hide their lack of probable cause and fabricating evidence to support Plaintiff's arrest and prosecution. (FAC ¶¶ 40, 132, 200). These allegations are sufficient to support a claim that Plaintiff was deprived of a liberty interest in violation of his due process rights, and for the Court to conclude that Count IX should survive dismissal.

  3.  <u>Qualified Immunity</u>

Finally, Defendant Morton asserts that he is entitled to qualified immunity. (ECF No. 46-2 at 14). Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For qualified

immunity to attach, an official must demonstrate his conduct was objectively reasonable. *Id.* at 818–19.

At this juncture, Plaintiff's allegations in support of his claims under § 1983 and the NJCRA are sufficient at this time to overcome Defendant Morton's assertion of qualified immunity. At all times alleged, Defendant Morton was a detective with the Ridgefield Park Police and, therefore, was acting under color of law. (FAC ¶ 8). As established above, *supra* Section III.2, Plaintiff has sufficiently asserted that he was framed, arrested, detained, and prosecuted based on Defendant Morton hiding the fact that the anonymous tip was actually provided by a known and noncredible source who was biased against Plaintiff, in violation of various constitutional rights under the Fourth and Fourteenth Amendments. These rights, including but not limited to Plaintiff's right to liberty, were clearly established at the time of the alleged violations. (FAC ¶¶ 197–98). Furthermore, it is reasonable to conclude that Defendant Morton, as a police officer, was aware of Plaintiff's right not to be arrested without probable cause or prosecuted based on improper evidence. Regardless of this knowledge, Defendant Morton allegedly purposefully hid the noncredible source of the anonymous tip from the Bergen County Prosecutor's Office in order to detain Plaintiff. (FAC ¶¶ 40, 112, 116, 132). These allegations, when taken as true, are sufficient for a reasonable fact finder to conclude that DeSantis acted in an unreasonable manner toward Plaintiff and beyond the scope of his role as a police officer. Therefore, the Court finds that such allegations are sufficient to withstand Defendant Morton's Motion to Dismiss based on qualified immunity.

## B. Defendant DeSantis

As an initial matter, neither party asserts that general personal jurisdiction can be satisfied in this case. Therefore, the issue before the Court is whether Plaintiff has made a *prima facie*

showing of specific personal jurisdiction over Defendant DeSantis. Defendant DeSantis argues

that, as a nonresident of New Jersey, the mere act of passing along information to police in the

forum state, with no further contact, is not enough to subject him to specific personal jurisdiction.

(ECF No. 47-2 at 9). Plaintiff responds that Defendant DeSantis' communication of false and

misleading information and participation in a conspiracy to frame Plaintiff at the very least satisfies

the alternative test for personal jurisdiction originally expressed in *Calder v. Jones*, 465 U.S. 783,

790 (1984) ("*Calder* effects test"). (ECF No. 66 at 1).

The Court agrees that Plaintiff has asserted sufficient facts to show that the Court has

personal jurisdiction over Defendant DeSantis pursuant to the *Calder* effects test. Under the

*Calder* effects test, a court can be found to have personal jurisdiction over a nonresident defendant

if the plaintiff establishes:

> (1) The defendant committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the forum such that the
>     forum can be said to be the focal point of the harm suffered by
>     the plaintiff as a result of that tort;
> (3) The defendant expressly aimed his tortious conduct at the forum
>     such that the forum can be said to be the focal point of the
>     tortious activity.

*IMO Indus.*, 155 F.3d at 265–66. The *Calder* effects test can be applied to § 1983 claims. *See*

*Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007); *see also City of Monterey v. Del Monte*

*Dunes at Monterey*, 526 U.S. 687, 709 (1999) ("there can be no doubt that claims brought pursuant

to § 1983 sound in tort.").

Here, Plaintiff alleges that Defendant DeSantis participated in a conspiracy to hide his

lack of probable cause for Plaintiff's arrest and prosecution, and is therefore liable for several

violations of § 1983 and NJLAD, including but not limited to malicious prosecution, conspiracy,

failure to intervene, and due process. (FAC ¶¶ 139–202). New Jersey appears to be the focal point

of the harm suffered by Plaintiff, as he was arrested, prosecuted, detained, denied information, and had his charges dismissed in New Jersey. (FAC ¶¶ 81, 116, 118, 133–34). Defendant DeSantis aimed his conduct at the forum state by reaching out to the Ridgefield Park Police and forwarding the information that led to the investigation and eventual prosecution of Plaintiff. (FAC ¶¶ 52–55). Accepting Plaintiff's allegations as true, Defendant DeSantis intentionally misrepresented the forwarded information and withheld the source of the anonymous tip from the Bergen County Prosecutor's Office, despite having multiple interactions with the BCDS and the Ridgefield Park Police during the course of the investigation. (FAC ¶¶ 40–41, 47–50, 52–55, 66, 111–112, 132). Moreover, Plaintiff alleges that the guns were planted at his work station in New Jersey by the BCSD and Ridgefield Park Police, which scheme Defendant DeSantis supposedly orchestrated and supervised. (FAC ¶¶ 68–70).

Defendant DeSantis argues that courts in the Third Circuit have ruled against a finding of personal jurisdiction in cases that involved more contact with the forum state than the contact alleged here. (ECF No. 47-2 at 10–11). In the first case Defendant DeSantis cites to, *Turner v. Boyle*, Civil Action No. 12-7224(SRC), 2013 WL 1409903, at *1–2 (D.N.J. April 8, 2013), the plaintiff, Turner, was held in a New Jersey jail for five days without bail before being tried in Connecticut for inciting injury to persons or property based on comments he made about Connecticut government officials on his New Jersey radio show. Turner brought suit in New Jersey for the five days he spent in a New Jersey jail without bail against, *inter alia*, the Connecticut police officers who faxed the arrest warrant to New Jersey, but the District Court found that faxing the arrest warrant to New Jersey did not establish minimum contacts for personal jurisdiction. *Id.* at *4. In the second case Defendant DeSantis relies on, *Bush v. Adams*, Civil Action No. 07-4936, 2008 WL 4791647, at *12 (E.D. Pa. Nov. 3, 2008), the Court found that "[m]erely obtaining an

arrest warrant for someone who is known to be in another state is not sufficient to subject the officer obtaining the warrant to personal jurisdiction in that state." In *Bush*, Virginia police officers obtained an arrest warrant based on false information from a Virginia Court on Virginia charges, and contacted Pennsylvania authorities to execute the arrest warrant in Pennsylvania. 2008 WL 4791647, at *13.

Contrary to Defendant DeSantis' argument, and unlike the case currently before the Court, the majority of the conduct in *Turner* and *Bush* took place outside of the forum states. In *Turner*, 2013 WL 1409903, at *1–2, the charges, warrant, court proceedings, and confinement all commenced not in the forum state but rather in Connecticut. Similarly, in *Bush*, 2008 WL 4791647, at *13, the false information was received, the warrant was obtained, and the charges were brought in Virginia, not the forum state of Pennsylvania. As discussed above, all of the activity in the current case arose in the forum state (*i.e.*, New Jersey), including the investigation, arrest, charges, detention, and prosecution of Plaintiff. (FAC ¶¶ 81, 116–118, 133–34). Unlike the defendants in *Turner* and *Bush*, Defendant DeSantis did not obtain an arrest warrant for Pennsylvania charges, but assisted the Ridgefield Park Police and BCSD in allegedly framing, arresting, and prosecuting Plaintiff in New Jersey for charges brought pursuant to New Jersey law, and misrepresented the information which gave rise to same. (*See generally* FAC). Insomuch as the above conduct was aimed at and arose in New Jersey, the Court concludes that Defendant DeSantis could have reasonably anticipated being brought into a court in this forum to litigate Plaintiff's claims. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297. Accordingly, the Court finds that Plaintiff has sufficiently established personal jurisdiction over Defendant DeSantis, and denies both of Defendant DeSantis' motions.[5]

---

[5] Although Cross-Claimants did not respond to Defendant DeSantis' Motion to Dismiss their Cross-Claims, said motion is based on the same reasoning as Defendant DeSantis' Motion to Dismiss Plaintiff's Amended Complaint.

IV.   **CONCLUSION**

For the aforementioned reasons, Ridgefield Park Defendants and Defendant DeSantis'

Motions to Dismiss Plaintiff's Amended Complaint and Defendant DeSantis' Motion to Dismiss

the Cross-Claims against him are hereby denied, with the exception that Plaintiff's excessive bail

claim shall be dismissed as time-barred.  An appropriate Order follows this Opinion.

Dated: August _23_, 2018.

**JOSE L. LINARES**
Chief Judge, United States District Court

---

(*See generally* ECF No. 68).  Therefore, both of Defendant DeSantis' Motions are denied for the reasons already expressed by the Court.