# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN PRUNKEL,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF BERGEN, *et al.*,<br><br>Defendants. | Hon. Esther Salas, U.S.D.J.<br>Hon. Steven C. Mannion, U.S.M.J.<br><br>Civil Action No. 17-5154-ES-SCM<br><br>**DOCUMENT FILED<br>ELECTRONICALLY** |

## REPLY BRIEF IN FURTHER SUPPORT OF
## DEFENDANT TROOPER DESANTIS'
## MOTION FOR SUMMARY JUDGMENT

By: Matthew Skolnik
Deputy Attorney General

On the Brief and
Counsel for Defendant Trooper N. DeSantis

COMMONWEALTH OF PENNSYLVANIA,
OFFICE OF ATTORNEY GENERAL
1600 Arch Street, Suite 300
Philadelphia, PA 19103
(215) 560-2136
mskolnik@attorneygeneral.gov

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. REPLY ARGUMENT ......................................................................................... 1

    A. There is no genuine dispute that Qualified Immunity applies to Plaintiff's federal claims against Trooper DeSantis. .......................... 1

    B. There is no genuine dispute that Sovereign Immunity applies to Plaintiff's state law claims against Trooper DeSantis. ....................... 6

III. CONCLUSION .................................................................................................... 9

CERTIFICATE OF SERVICE ............................................................................... 10

## TABLE OF AUTHORITIES

**Page**

**Cases:**

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011) ...................................................................................................3

*Brautigam v. Fraley*,
   684 F. Supp. 2d 589 (M.D. Pa. 2010) .......................................................................7

*Buerhle v. Hahn*,
   C.A. No. 13-3474, 2014 WL 123333 (E.D. Pa. Jan. 14, 2014)..............................7

*Curley v. Klem*,
   298 F.3d 271 (3d Cir. 2002) .....................................................................................1

*Curley v. Klem*,
   499 F.3d 199 (3d Cir. 2007) .....................................................................................4

*District of Columbia v. Wesby*,
   138 S.Ct. 577 (2018)..................................................................................................4

*Kentucky v. Graham*,
   473 U.S. 159 (1985) ..................................................................................................6

*La Frankie v. Miklich*,
   618 A.2d 1145 (Pa. Commw. Ct. 1992).............................................................7, 8

*Larsen v. State Employees' Ret. Sys.*,
   553 F.Supp.2d 403 (M.D.Pa. 2008) .........................................................................7

*Lombardo v. Pa., Dep't of Pub. Welfare*,
   540 F.3d 190 (3d Cir. 2008) .....................................................................................6

*Malley v. Briggs*,
   475 U.S. 335 (1986) ..................................................................................................4

*Mantz v. Chain*,
   239 F. Supp. 2d 486 (D.N.J. 2002).........................................................................1

*Maute v. Frank*,
   441 Pa.Super. 401, 657 A.2d 985 (Pa.Super.Ct. 1995).........................................7

*Povish v. PA DOC*,
   C.A. No. 13-0197, 2014 WL 1281226 (E.D. Pa. Mar. 28, 2014) ..........................7

*Saucier v. Katz*,
   533 U.S. 194 (2001) ...............................................................................................3

*White v. Andrusiak*,
   655 Fed. Appx. 87 (3d Cir. 2016) ......................................................................3, 5

*Wilson v. Russo*,
   212 F.3d 781 (3d Cir. 2000) ..................................................................................5


**Statutes:**

1 Pa.C.S.A. § 2310................................................................................................7, 8

42 Pa. C.S. § 8501......................................................................................................6

N.J.S.A. § 59:1-3........................................................................................................8

## I.	INTRODUCTION

In response to Trooper DeSantis' Motion for Summary Judgment, Plaintiff simply has not raised one genuine dispute of material fact. Plaintiff's sole point of contention appears to be with the fact that Mr. Prunkel was charged by the Bergen County Prosecutor's Office and held for trial in state court: two decisions in which Trooper DeSantis indisputably had no role.

## II.	REPLY ARGUMENT

### A. There is no genuine dispute that Qualified Immunity applies to Plaintiff's federal claims against Trooper DeSantis.

The two-prong test for qualified immunity, which was explained in the movant's opening Brief, need not be repeated here. Plaintiff begins his response to Trooper DeSantis' claim of qualified immunity by stating that the objective reasonableness of the trooper's conduct is a jury question. (Pl's Brief at 24.) This is incorrect. *See Mantz v. Chain*, 239 F. Supp. 2d 486, 495 (D.N.J. 2002) ("In determining whether a police officer is entitled to qualified immunity, both the existence of a clearly established right and the objective reasonableness of the officer's actions are questions of law for the Court to decide, but any disputed issues of historical fact relevant to the Court's determination must be submitted to the jury." (citing *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002)). Although it is unclear from Plaintiff's brief exactly what he claims are "disputed issues of

historical fact,"[1] there is no evidence in the record establishing that the purportedly "exculpatory evidence" existed when Trooper DeSantis forwarded the anonymous tip to Detective Morton – or even that such evidence exists as of today.

Plaintiff's brief repeatedly asserts that Trooper DeSantis "falsely stated" all sorts of things related to Prunkel, without citing to any record evidence establishing that *any* of DeSantis' statements in fact were false – let alone material to whether the plaintiff's constitutional rights were violated. For example, Plaintiff argues that Trooper DeSantis should have informed someone in New Jersey law enforcement (without saying who) that Prunkel was not affiliated with a motorcycle gang. This argument fails to establish that DeSantis violated any of Prunkel's federal rights, for at least three reasons. First, Detective Morton did not read Trooper DeSantis' email about Prunkel's alleged gang affiliations until after Prunkel was arrested. *See* Morton Dep. (Ex. B, Doc. No. 141-5), at 52:22-25, 147-148; *see also id.* at 119:3-10 ("I don't believe that was part of our conversation."). Second, Detective Morton came to his own independent conclusion, based on his own observations and experience, that Prunkel was affiliated with an outlaw

---

[1] Tellingly, Plaintiff's denials of certain statements of material fact – *compare* DeSantis' SMF (Doc. No. 141-2) *with* Doc. No. 144-1 – are unsupported by the record. Other denials attempt to rewrite the record, including the plaintiff's *own* verified answers to interrogatories. For example, paragraph 4 of DeSantis' Statement of Material Facts cited to Plaintiff's verified answer to Interrogatory # 25 – namely, that none of the defendants had "any relationship" with the plaintiff before August 6, 2014. This answer was never amended, yet Plaintiff now attempts to deny it. (Pl's Response to SMF (Doc. No. 144-1, ¶ 4)). As a matter of law, such revisionist history cannot give rise to a genuine dispute under Rule 56.

motorcycle gang. *Id.* at 83:2-18. Third, to this day there is nothing definitive in the record establishing whether or not Prunkel was affiliated with a motorcycle gang, thereby making the issue far from the "exculpatory evidence" which the plaintiff claims provides evidence of Trooper DeSantis' "intentional wrongdoing" sufficient to defeat qualified immunity.

The above is just one example of the lack of record evidence supporting the plaintiff's list of alleged intentional wrongdoing by Trooper DeSantis. All of Prunkel's other bullet points (on pp. 27-28 of his brief) are without citations to the record. More importantly, as a third party to the New Jersey authorities' warrant process, Trooper DeSantis "was entitled to rely on that warrant as definitively establishing probable cause." *White v. Andrusiak*, 655 Fed. Appx. 87, 90-91 n.6 (3d Cir. 2016). It was objectively reasonable for Trooper DeSantis to provide the inculpatory evidence to Detective Morton. Further, none of DeSantis' conduct, under the facts of record, constituted a violation of the plaintiff's rights under federal law.

As to the second prong of the qualified immunity analysis*, see Saucier v. Katz*, 533 U.S. 194 (2001), Prunkel fails to cite to any clearly established law or existing precedent (as of August 6, 2014) which "placed the statutory or constitutional question beyond debate." *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). It is not enough that some courts' decisions supporting the plaintiff's

3

position may have been published before August 6, 2014. "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. . . . Otherwise, the rule is not one that 'every reasonable official' would know." *District of Columbia v. Wesby*, 138 S.Ct. 577, 589-590 (2018). Plaintiff has failed to identify a violation of clearly established law knowingly made by Trooper DeSantis. *See id.* at 589 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Even if, *arguendo*, Trooper DeSantis made a mistake of law, such mistake was reasonable – especially, but not only, since Prunkel was a felon not to possess firearms. *See* DeSantis Dep. (Ex. A), at 92:18 – 93:3; *see also Curley v. Klem*, 499 F.3d 199, 211 (3d Cir. 2007) ("whether an officer made a reasonable mistake of law and is thus entitled to qualified immunity is a question of law that is properly answered by the court, not a jury").

Prunkel similarly fails to show that Trooper DeSantis violated any of the plaintiff's constitutional rights with his *actual conduct* rather than some fanciful (and wholly unsupported) notion of "noble cause corruption." As Detective Morton testified, Trooper DeSantis had no role in the actual arrest of Prunkel. *See* DeSantis SMF (Doc. No. 141-2), ¶¶ 18-19 and citations therein. Even though it is undisputed that Trooper DeSantis did not participate in Plaintiff's arrest, he argues that DeSantis was obligated to send "exculpatory" information to the New Jersey

4

authorities. Yet, the Third Circuit has noted repeatedly that such a purported obligation is far from being considered clearly established law.

The Court of Appeals addressed a similar argument in *Wilson v. Russo*, 212 F.3d 781 (3d Cir. 2000). There, the plaintiff alleged that the arresting officer had a duty to provide the prosecutor with exculpatory information obtained from a witness during a post-arrest interview he conducted and to seek his release. The Third Circuit questioned whether there was such a duty under the Constitution, stating "[t]he law in this area is not entirely settled." *Id.* at 792. The *Wilson* court ultimately concluded it did not need to resolve "these difficult issues," since the information "clearly did not dispel the earlier probable cause." *Id.* Similarly, probable cause was found by the Superior Court of New Jersey as to Prunkel. *See* DeSantis SMF (Doc. 141-2), ¶¶ 20, 22 and Pl's responses thereto ("admitted"). Perhaps more importantly, the law in this area still was not settled as of July of 2016 (two years *after* Prunkel's arrest), when the Third Circuit decided *White v. Andrusiak, supra*. *White*, 655 Fed. Appx. at 91 n.7 ("Our sister Circuits are split on this issue, and we have thus far declined to take a position.").

Under the above factual circumstances and legal authority, as a matter of law the conduct of Trooper DeSantis was reasonable and the doctrine of qualified immunity bars the plaintiff's federal claims against him.

## B. There is no genuine dispute that Sovereign Immunity applies to Plaintiff's state law claims against Trooper DeSantis.

Plaintiff's Brief seems to be premised on the theory that if you simply ignore something your opponent says, it will go away. Trooper DeSantis' opening Brief quoted from the Third Circuit's opinion in *Lombardo v. Pa., Dep't of Pub. Welfare*, 540 F.3d 190 (3d Cir. 2008), noting that when Pennsylvania employees are sued for intentional torts the federal courts are to look to state law to determine if sovereign immunity <u>beyond</u> Eleventh Amendment immunity applies, and cited to two statutes and a half dozen cases on point. Plaintiff's response not only fails to rebut this authority; they are not even mentioned.

Instead, Plaintiff focuses on the fact that he sued Trooper DeSantis in his individual capacity rather than his official capacity. In so doing, Plaintiff confuses federal lawsuits in which the question of whether the officer is sued in his individual or official capacity is relevant for determining whether a federal court has subject matter jurisdiction for purposes of determining Eleventh Amendment immunity – *e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985) – with sovereign immunity under Pennsylvania law, which bars damages claims for violations of state law, including the intentional torts at issue here, against a "Commonwealth party," such as Commonwealth employees acting within the scope of their duties. *See* 42 Pa. C.S. § 8501.

6

Plaintiff's "individual capacity" distinction is relevant to Plaintiff's *constitutional* claims, but utterly irrelevant to the state law claims (which is what Section V.A of the movant's opening brief concerned). Plaintiff's error is presumed to be accidental because, among other reasons, it unfortunately is not unusual, as exemplified below:

> Plaintiffs similarly miss the point by arguing that their state law claims should proceed because Defendants were sued in their individual capacities. However, "[s]overeign immunity . . . applies to Commonwealth employees in both their official and individual capacities, so long as the employees are 'acting with the scope of their duties.' " *Larsen v. State Employees' Ret. Sys.*, 553 F.Supp.2d 403, 420 (M.D.Pa. 2008) (Jones, J.) (quoting *Maute v. Frank*, 441 Pa.Super. 401, 657 A.2d 985, 986 (Pa.Super.Ct. 1995)).

*Brautigam v. Fraley*, 684 F. Supp. 2d 589, 593 (M.D. Pa. 2010) (alterations in original); *see also Povish v. PA DOC*, C.A. No. 13-0197, 2014 WL 1281226, at *9 (E.D. Pa. Mar. 28, 2014) ("it is clear that the capacity in which a Defendant is sued is not the proper question; rather, sovereign immunity protects "the Commonwealth, and its officials and employees acting within the scope of their [job] duties." (quoting 1 Pa.C.S.A. § 2310); *Buerhle v. Hahn*, C.A. No. 13-3474, 2014 WL 123333, at *6 (E.D. Pa. Jan. 14, 2014) (same).

In *La Frankie v. Miklich*, 618 A.2d 1145 (Pa. Commw. Ct. 1992), a state trooper arrested the plaintiff for unlawful use of a credit card and forgery. The district attorney entered a *nolle prosequi* to the charges. Subsequently, plaintiff

7

sued the trooper for abuse of process, malicious prosecution, and false arrest. After a jury trial, the jury found the state trooper guilty of abuse of process. The state trooper moved for judgment notwithstanding the verdict, and asserted the affirmative defenses of sovereign and official immunity. The trial court granted the state trooper's motion, and the appellate court (*en banc*) affirmed this decision. The Commonwealth Court held that since the state trooper was acting within the scope of his duties, he was protected by sovereign immunity from the imposition of liability for intentional tort claims. *Id.* at 1149.

Under *La Frankie* and its progeny, where a state trooper is sued for intentional torts under state law,[2] "the only question to be resolved to determine if immunity attaches is whether [the] Trooper [] was acting within the scope of his duties as a state trooper." *Id.* Because Plaintiff has never disputed that Trooper DeSantis was acting within the scope of his employment when he passed along the anonymous tip and other information concerning Prunkel to Detective Morton – nor would any such dispute be genuine – DeSantis is entitled to absolute sovereign immunity under 1 Pa. C.S. § 2310 from the plaintiff's state law claims. Furthermore, Plaintiff's response does not dispute that his state law claims against

---

[2] Although the state law at issue in the present lawsuit is New Jersey state law, there is no provision of the N.J. Tort Claims Act or any known common law which attempts to abrogate the sovereign immunity of Pennsylvania state employees. Moreover, the N.J. Tort Claims Act defines a "Public employee" to be an employee of a New Jersey "public entity" and therefore is not determinative of a Pennsylvania employee's potential liability in tort. *See* N.J.S.A. § 59:1-3. This is not a "conflict of laws" so much as two independent and parallel statutory schemes.

8

Trooper DeSantis should be dismissed (presumably for other reasons). Therefore, judgment as a matter of law on the remaining state law causes of action (Counts III-VI and IX) should be entered in the movant's favor.

## III.   CONCLUSION

For all the foregoing reasons and those stated in his opening Brief, Defendant Trooper Nicholas DeSantis respectfully requests that this Court grant his Motion for Summary Judgment and enter judgment as a matter of law in his favor.

Respectfully submitted,

COMMONWEALTH OF PENNSYLVANIA,
OFFICE OF ATTORNEY GENERAL

Dated: January 28, 2020          By:   */s/ Matthew Skolnik*
                                       Matthew Skolnik
                                       Deputy Attorney General
                                       Attorney I.D. No. 031652011
                                       1600 Arch Street, 3rd Floor
                                       Philadelphia, PA 19103
                                       (215) 560-2136
                                       mskolnik@attorneygeneral.gov

*Counsel for Defendant, Trooper N. DeSantis*

# CERTIFICATE OF SERVICE

I, Matthew Skolnik, hereby certify that the foregoing Reply Brief of Defendant Trooper DeSantis in further support of his Motion for Summary Judgment has been filed electronically on January 28, 2020 and is available for viewing and downloading by all counsel of record from the Court's Electronic Case Filing System.

        COMMONWEALTH OF PENNSYLVANIA,
        OFFICE OF ATTORNEY GENERAL

By:   */s/ Matthew R. Skolnik*
      Matthew R. Skolnik
      Deputy Attorney General
      Attorney I.D. No. 031652011
      1600 Arch Street, Suite 300
      Philadelphia, PA 19103
      (215) 560-2136
      mskolnik@attorneygeneral.gov